# Exhibit C

BROKER-DEALER AGREEMENT

Among

DEUTSCHE BANK TRUST COMPANY AMERICAS,
As Auction Agent

And

UBS FINANCIAL SERVICES INC..

And

WEST VIRGINIA UNIVERSITY HOSPITALS, INC..

Dated as of August 1, 2003

$25,800,000
West Virginia Hospital Finance Authority
Hospital Revenue Refunding Bonds
(West Virginia University Hospitals, Inc.)
Auction Rate Certificates (ARCs[(SM)]) 2003 Series B

$44,650,000
West Virginia Hospital Finance Authority
Hospital Refunding and Improvement Revenue Bonds
(West Virginia University Hospitals, Inc.)
Auction Rate Certificates (ARCs[(SM)]) 2003 Series C

$45,750,000
West Virginia Hospital Finance Authority
Hospital Revenue Refunding Bonds
(West Virginia University Hospitals, Inc.)
Auction Rate Certificates (ARCs[(SM)]) 2003 Series D

This instrument was prepared by:

GOODWIN & GOODWIN, LLP
300 Summers Street, Suite 1500
Charleston, West Virginia 25301

## TABLE OF CONTENTS

Page

ARTICLE I        DEFINITIONS AND RULES OF CONSTRUCTION ................................... 2

    Section 1.1      Terms Defined by Reference to the Bond Indenture .......................... 2

    Section 1.2      Terms Defined Herein ....................................................................... 2

    Section 1.3      Rules of Construction......................................................................... 2

    Section 1.4      Warranties of BD ............................................................................... 2

ARTICLE II       THE AUCTION..................................................................................... 3

    Section 2.1      Purpose; Incorporation by Reference of Auction Procedures and Settlement Procedures .................................................................. 3

    Section 2.2      Preparation for Each Auction ............................................................. 3

    Section 2.3      Auction Schedule; Method of Submission of Orders ......................... 4

    Section 2.4      Notices ............................................................................................... 6

    Section 2.5      Compensation .................................................................................... 6

    Section 2.6      Settlement .......................................................................................... 7

ARTICLE III     THE AUCTION AGENT ...................................................................... 8

    Section 3.1      Duties and Responsibilities of the Auction Agent.............................. 8

    Section 3.2      Rights of the Auction Agent............................................................... 9

    Section 3.3      Rights of the Auction Agent............................................................... 9

ARTICLE IV     DISCLOSURE; INDEMNIFICATION ............................................... 9

    Section 4.1      Disclosure .......................................................................................... 9

    Section 4.2      Indemnification and Contribution ..................................................... 10

ARTICLE V       MISCELLANEOUS ........................................................................... 11

    Section 5.1      Termination....................................................................................... 11

    Section 5.2      Participant ......................................................................................... 12

## TABLE OF CONTENTS
(continued)

**Page**

| | | |
|---|---|---|
| Section 5.3 | Communications | 12 |
| Section 5.4 | Entire Agreement | 13 |
| Section 5.5 | Benefits; Successors and Assigns | 13 |
| Section 5.6 | Amendment; Waiver | 13 |
| Section 5.7 | Severability | 13 |
| Section 5.8 | Execution in Counterparts | 14 |
| Section 5.9 | Governing Law | 14 |
| Section 5.10 | Limitation of Liability | 14 |
| Section 5.11 | No Implied Duties | 14 |

BROKER-DEALER AGREEMENT

This is a BROKER-DEALER AGREEMENT dated as of August 1, 2003 (the "Broker-Dealer Agreement"), among (i) DEUTSCHE BANK TRUST COMPANY AMERICAS (the "Auction Agent"), a New York banking company, not in its individual capacity but solely as agent of The Bank of New York (the "Bond Trustee"), as Bond Trustee under the Bond Trust Indenture dated as of August 1, 2003 (the "Bond Indenture"), from the West Virginia Hospital Finance Authority (the "Issuer"), pursuant to authority granted to the Auction Agent in the Auction Agreement dated as of August 1, 2003 (the "Auction Agreement") between the Bond Trustee and the Auction Agent; (ii) UBS FINANCIAL SERVICES INC. ("BD") and (iii) WEST VIRGINIA UNIVERSITY HOSPITALS, INC., a West Virginia nonstock, not-for-profit corporation (the "Obligated Group Representative").

RECITALS

WHEREAS, the Issuer is issuing (i) $25,800,000 Hospital Revenue Refunding Bonds (West Virginia University Hospitals, Inc.) 2003 Series B Auction Rate Certificate (ARCs$^{(sm)}$) (the "2003 B Bonds"), (ii) $44,650,000 Hospital Revenue Refunding and Improvement Bonds (West Virginia University Hospitals, Inc.) 2003 Series C Auction Rate Certificate (ARCs$^{(sm)}$) (the "2003 C Bonds"), and (iii) $45,750,000 Hospital Revenue Improvement Bonds (West Virginia University Hospitals, Inc.) 2003 Series D Auction Rate Certificate (ARCs$^{(sm)}$) (the "2003 D Bonds," and, together with the 2003 B Bonds and the 2003 C Bonds, sometimes hereinafter collectively referred to as the "ARCs" or "ARCs Bonds"); and

WHEREAS, BD is to perform certain duties set forth herein; and

WHEREAS, the Bond Indenture provides that, except as provided therein, the interest rate on the ARCs shall be the Auction Rate which shall be, except as otherwise provided therein, the rate per annum that the Auction Agent determines to have resulted from the implementation of the Auction Procedures; and

WHEREAS, Deutsche Bank Trust Company Americas has been appointed as Auction Agent for purposes of the Auction Agreement, and pursuant to Section 2.8(a) of the Auction Agreement, the Obligated Group Representative has requested and directed the Auction Agent to execute and deliver this Broker-Dealer Agreement; and

WHEREAS, the Auction Procedures require the participation of one or more Broker-Dealers;

NOW, THEREFORE, the Auction Agent, as agent for the Bond Trustee, BD, for the benefit of the Existing Holders and the Potential Holders of the ARCs, and the Obligated Group Representative agree as follows:

1

## ARTICLE I

### DEFINITIONS AND RULES OF CONSTRUCTION

Section 1.1.    Terms Defined by Reference to the Bond Indenture.  Capitalized terms not defined herein shall have the respective meanings specified in the Bond Indenture and the Auction Agreement.  Unless otherwise specified, section references to the Auction Agreement refer to such Sections in the Auction Agreement dated as of August 1, 2003, described above.

Section 1.2.    Terms Defined Herein.  As used herein and in the exhibits hereto, the following terms shall have the following meanings, unless the context otherwise requires.

(a)  "Authorized Officer" shall mean such Director, Vice President, Assistant Vice President and Associate assigned to the Corporate Trust & Agency Services and every other officer or employee of the Auction Agent designated as an "Authorized Officer" for purposes hereof in a communication to the BD.

(b)  "BD Officer" shall mean each officer or employee of BD designated as a "BD Officer" for purposes of this Broker-Dealer Agreement in a communication to the Auction Agent.

(c)  "Broker-Dealer Agreement" shall mean this Broker-Dealer Agreement and any substantially similar agreement between the Auction Agent and BD.

(d)  "Settlement Procedures" shall mean the Settlement Procedures for the ARCs and shall be substantially in the form attached hereto as EXHIBIT A.

Section 1.3.    Rules of Construction.  Unless the context or rules indicates another or different meaning or intent, the following rules shall apply to the construction of this Broker-Dealer Agreement:

(a)  Words importing the singular number shall include the plural number  and vice versa.

(b)  The captions and headings herein are solely for the convenience of reference and shall not constitute a part of this Broker-Dealer Agreement nor shall they affect its meaning, construction or effect.

(c)  The words "hereof," "herein," "hereto," and other words of similar import refer to this Broker-Dealer Agreement as a whole.

(d)  All references herein to a particular time of day shall be to New York City time.

(e)  Each reference to the purchase, sale or holding of "ARCs" shall refer to beneficial ownership interests in ARCs unless the context clearly requires otherwise.

Section 1.4.    Warranties of BD.  BD hereby represents and warrants that this Broker-Dealer Agreement has been duly authorized, executed and delivered by BD and that, assuming

2

the due authorization, execution and delivery hereof by the Auction Agent, this Broker-Dealer Agreement constitutes a valid and binding agreement of BD, enforceable against it in accordance with its terms.

## ARTICLE II

## THE AUCTION

Section 2.1. Purpose; Incorporation by Reference of Auction Procedures and Settlement Procedures.

(a) On each Auction Date, the Auction Procedures will be followed by the Auction Agent for the purpose of determining the Auction Rate for each Auction Period after the Initial Period for the ARCs Bonds. Each periodic implementation of such procedures is hereinafter referred to as an "Auction".

(b) Without prejudice to Section 3.1(a) hereof, all of the provisions contained in the Auction Procedures and the Settlement Procedures are incorporated herein by reference in their entirety and shall be deemed to be a part of this Broker-Dealer Agreement to the same extent as if such provisions were fully set forth herein.

(c) BD agrees to act as, and assumes the obligations of, and limitations and restrictions placed upon, a Broker-Dealer under this Broker-Dealer Agreement. BD understands that other Persons meeting the requirements specified in the definition of "Broker-Dealer" contained in the Bond Indenture may, with the prior written consent of the Market Agent, execute Broker-Dealer Agreements and participate as Broker-Dealers in Auctions. BD agrees to handle customer orders in accordance with its respective duties under applicable securities laws and rules.

(d) BD and other Broker-Dealers may participate in Auctions for their own accounts. The Obligated Group Representative may, however, by notice to BD and all other Broker-Dealers, prohibit all of the Broker-Dealers from submitting Bids in Auctions for their own accounts, provided that Broker-Dealers may continue to submit Hold Orders and Sell Orders. Notwithstanding the foregoing, if BD is an affiliate of the Obligated Group Representative it may not submit Bids to purchase ARCs in Auctions for its own account, but may submit Hold Orders and Sell Orders in Auctions with respect to ARCs otherwise acquired for its own account. The Auction Agent shall be under no duty or liability with respect to monitoring compliance with this Section 2.1(d).

Section 2.2. Preparation for Each Auction.

(a) Not later than 9:30 A.M. on each Auction Date, the Auction Agent shall advise BD by telephone or other electronic communication acceptable to the parties of the After-Tax Equivalent Rate. Not later than 10:30 A.M. on each Auction Date, the Auction Agent shall advise BD by telephone or other electronic communication acceptable to the parties of All-Hold Rate, the Maximum Auction Rate and Kenny Index used in determining such rates (and any other components of the foregoing).

(b) In the event that the Auction Date for any Auction shall be changed after the Auction Agent has given the notice referred to in clause (viii) of paragraph (a) of the Settlement Procedures, the Auction Agent, by such means as the Auction Agent deems practicable, shall give notice of such change to BD not later than the earliest of (i) 9:15 A.M. on the new Auction Date, (ii) 9:15 A.M. on the originally scheduled Auction Date and (iii) 9:15 A.M. on the next Interest Payment Date. Thereafter, BD shall promptly notify customers of BD that BD believes are Existing Holders of such change in the Auction Date.

(c) On the Closing Date and from time to time thereafter as the Auction Agent shall request, BD shall provide the Auction Agent and, upon request, the Obligated Group Representative, with a list, substantially in the form of EXHIBIT E hereto, of the names of its customers that it believes are Existing Holders of ARCs and the principal amount of ARCs held by each of such customers. The Auction Agent shall not disclose any such information so provided to any Person other than the Bond Trustee, the Issuer, the Obligated Group Representative or BD except as otherwise provided by law; provided, however, that the Auction Agent reserves the right and is authorized to disclose any such information if (a) it is ordered to do so by a court of competent jurisdiction or a regulatory body, judicial or quasi-judicial agency or authority having the authority to compel such disclosure, (b) it is advised by its counsel that its failure to do so would be unlawful or (c) failure to do so would expose the Auction Agent to loss, liability, claim, damage or expense for which it has not received indemnity or security satisfactory to it.

(d) Not later than 3:00 P.M. on the Record Date preceding each Auction Date, the Auction Agent shall notify BD of any change in the aggregate principal amount of ARCs, as of the opening of business on such Record Date by delivering a written notice to BD by telecopy or other electronic communication acceptable to the parties.

Section 2.3.   Auction Schedule; Method of Submission of Orders.

(a) The Auction Agent shall conduct Auctions for the ARCs in accordance with the schedule set forth below. Such schedule may be changed at any time by the Auction Agent at the written direction of the Obligated Group Representative to reflect then currently accepted market practices for similar auctions. The Auction Agent shall give notice of any such change to BD, the Issuer, the Obligated Group Representative and the Bond Trustee, which notice shall be given prior to the close of business on the Business Day next preceding the first Auction Date on which any such change shall be effective.

| Time | Event |
|------|-------|
| By 9:00 A.M. | Market Agent advises Auction Agent in writing of any changes in Applicable Percentage and, when applicable, determines the "AA" Financial Commercial Paper Rate. Auction Agent obtains the Kenny Index. |
| By 9:30 A.M. | Auction Agent determines the After-Tax Equivalent Rate and advises the Broker-Dealers of such rate. |
| By 10:30 A.M. | Auction Agent advises the Bond Trustee and the Broker-Dealers of the applicable Maximum Auction Rate and the All-Hold rate and the components thereof, as set forth in Section 2.3(b)(i) hereof. Auction Agent, when applicable, advises Bond Trustee of "AA" Financial Commercial Paper Rate. |
| 9:30 A.M. - 1:00 P.M. | Auction Agent assembles information communicated to it by Broker-Dealers as provided in Section 2.01(b)(i) of Exhibit A of the Bond Indenture. Submission Deadline is 1:00 P.M. |
| Not earlier than 1:00 P.M. | Auction Agent makes determination pursuant to Section 2.01(c)(i) of Exhibit A of the Bond Indenture. |
| By approximately 3:00 P.M. | Auction Agent advises Bond Trustee and the Corporation of the Auction Rate for the next Auction Period and results of the Auction as provided in Section 2.01(c)(iii) of Exhibit A to the Bond Indenture. Submitted Bids and Submitted Sell Orders are accepted and rejected and ARCs allocated as provided in Section 2.01(d) of Exhibit A of the Bond Indenture. Auction Agent gives notice of Auction results as set forth in [Section 2.4] of Broker-Dealer Agreement. |

(b) BD agrees, for the purpose of implementing the Auctions (and thereby achieving the lowest possible interest rate on the ARCs), to contact Potential Holders, including Persons that are not Existing Holders, prior to the Submission Deadline on each Auction Date to determine the principal amount of ARCs, if any, that each such Potential Holder offers to purchase if the rate determined by the Auction Procedures for the next succeeding Auction Period is not less than the rate per annum requested by such Potential Holder. BD further agrees, upon request, to deliver a copy of the Auction Procedures and other relevant documents prepared for the purpose of disclosure to Potential Holders by the Issuer or the Obligated Group Representative relating to the ARCs to each Potential Holder prior to such Potential Holder's participation in any Auction.

(c) In each Auction in which BD submits one or more Orders, BD shall submit a separate Order to the Auction Agent for each Potential Holder or Existing Holder on whose behalf BD is submitting an Order and shall not net or aggregate the Orders of different Potential Holders or Existing Holders on whose behalf BD is submitting Orders.

Each Order shall be in writing in substantially the form attached hereto as EXHIBIT A or in such other form as may be reasonably acceptable to the Auction Agent.

(d) BD shall deliver to the Auction Agent (i) a written notice, substantially in the form attached hereto as EXHIBIT C of transfers of ARCs made through BD by an Existing Holder to another Person other than pursuant to an Auction, and (ii) a written notice, substantially in the form attached hereto as EXHIBIT D of the failure of any ARCs to be transferred to or by any Person that purchased or sold ARCs through BD pursuant to an Auction. The Auction Agent is not required to accept any such notice specified in this subsection (d) for an Auction if it is received by it after 3:00 P.M. on the Business Day preceding such Auction.

Section 2.4.   Notices.

(a) On each Auction Date, the Auction Agent shall notify BD by telephone or other electronic communication acceptable to the parties of the results of the Auction as set forth in paragraph (a) of the Settlement Procedures. If requested by BD, the Auction Agent shall as soon as practicable following any such request, notify BD in writing, if previously so requested, of the disposition of all Orders submitted by BD in the Auction held on such Auction Date.

(b) BD shall notify each Existing Holder or Potential Holder on whose behalf BD has submitted an Order as set forth in paragraph (b) of the Settlement Procedures, and take such other action as is required of BD pursuant to the Settlement Procedures.

(c) The Auction Agent shall deliver to BD after receipt all notices and certificates which the Auction Agent is required to deliver to BD pursuant to Section 2 of the Auction Agreement at the times and in the manner set forth in the Auction Agreement.

Section 2.5.   Compensation.

(a) The initial Broker-Dealer Fee Rate shall equal .25 of 1% per annum. The Broker-Dealer Fee for the ARCs shall be paid by the Obligated Group Representative and represents compensation for the services of the Broker-Dealer in facilitating Auctions for the benefit of the beneficial owners of the ARCs Bonds. The Broker-Dealer Fee Rate may be adjusted from time to time with the approval of the Obligated Group Representative upon a written request of the Broker-Dealer delivered to the Obligated Group Representative.

(b) While the ARCs are in an Auction Period, on each Interest Payment Date for each Interest Payment Period immediately following each Auction Date, the BD shall be entitled to receive for services rendered hereunder during the immediately preceding period an amount equal to the product of (i) a fraction, the numerator of which is the actual number of days since the last fee payment (or, in the case of the initial period, the actual number of days elapsed since the date of delivery of the ARCs) and the denominator of which is 360, times (ii) the Broker-Dealer Fee Rate times (iii) the sum of (A) the sum of the aggregate principal amount of the ARCs placed by BD in such Auction that were (1) the subject of Submitted Bids of Existing Holders submitted by BD

6

and continued to be held as a result of such submission and (2) the subject of Submitted Bids of Potential Holders submitted by BD and purchased as a result of such submission and (B) the aggregate principal amount of the ARCs subject to valid Hold Orders (determined in accordance with Section 2.01(a)(i) of Exhibit A to the Bond Indenture) submitted to the Auction Agent by BD and (C) the principal amount of the ARCs deemed to be subject to Hold Orders by Existing Holders pursuant to Section 2.01(a)(i) of Exhibit A to the Indenture that were acquired by such Existing Holders through BD divided by (iv) the aggregate principal amount of ARCs auctioned during the previous period divided by the aggregate principal amount of ARCs outstanding at the beginning of such period. Such amounts shall be communicated by the Auction Agent to the Obligated Group Representative and the Bond Trustee by 4:00 P.M., New York City time, on the Business Day immediately preceding each Interest Payment Date. By noon on each Interest Payment Date, the Obligated Group Representative shall deliver to the Auction Agent the amount constituting the Broker- Dealer Fee, by wire transfer of immediately available funds to such account as the Auction Agent may designate. The amount constituting the Broker-Dealer Fee shall be held by the Auction Agent on behalf of the Broker-Dealer, and immediately upon receipt of such Fee, the Auction Agent shall deliver such Fee to the Broker-Dealer, pursuant to the written instructions of the Broker-Dealer. For purposes of subclause (iii) (C) of the foregoing sentence, if any Existing Holder who acquired ARCs through BD transfers those ARCs to another Person other than pursuant to an Auction, then the Broker-Dealer for the ARCs so transferred shall continue to be BD; provided, however, that if the transfer was effected by, or if the transferee is, a Broker-Dealer other than BD, then such Broker-Dealer shall be the Broker-Dealer for such ARCSs. If for any reason an Auction is not held on an Auction Date, there shall be no Broker-Dealer Fee applicable with respect to such Auction Date.

Section 2.6.    Settlement.

(a) If any Potential Holder on whose behalf BD has submitted an Order fails to deliver funds with respect to any Auction, BD shall promptly deliver such funds to the party entitled to receive such funds. If any Existing Holder on whose behalf BD has submitted an Order fails to instruct its Participant to deliver ARCs subject to such Order against payment therefor, BD shall instruct such Participant to deliver such ARCs against payment therefor. The delivery of funds by BD for the purchase of ARCs by a Potential Holder, as provided above, shall not relieve such Potential Holder of any liability to BD for payment for such ARCs. Notwithstanding the foregoing provisions of this Section 2.6(a), any delivery or nondelivery of ARCs which represents any departure from the results of an Auction, as determined by the Auction Agent, shall be of no effect unless and until the Auction Agent shall have been notified of such delivery or non-delivery in accordance with the terms of Section 2.3(e) hereof. The Auction Agent shall have no duty or liability with respect to enforcement of this Section 2.6(a).

(b) The Auction Agent, the Bond Trustee, the Obligated Group Representative and the Issuer shall have no responsibility or liability with respect to the failure of an Existing Holder, a Potential Holder or its respective Agent Member to deliver ARCs or to pay for ARCs sold or purchased pursuant to the Auction Procedures or otherwise.

## ARTICLE III

## THE AUCTION AGENT

Section 3.1.    Duties and Responsibilities of the Auction Agent.

(a) The Auction Agent is acting solely as agent of the Bond Trustee and owes no duties, fiduciary or otherwise, to any other person by reason of this Broker-Dealer Agreement other than the Obligated Group Representative except expressly set forth herein or in the Auction Agreement, and no implied duties, fiduciary or otherwise, shall be read into this Broker-Dealer Agreement against the Auction Agent.

(b) The Auction Agent undertakes to perform such duties and only such duties as are expressly set forth herein, or expressly incorporated herein by reference pursuant to Section 2.1(b) hereof, to be performed by it, and no implied covenants or obligations shall be read into this Broker- Dealer Agreement against the Auction Agent.

(c) In the absence of negligence or willful default on its part, the Auction Agent, whether acting directly or through agents or attorneys as provided in Section 3.2(d) hereof, shall not be liable for any action taken, suffered, or omitted or for any error of judgment made by it in the performance of its duties hereunder. The Auction Agent shall not be liable for any error of judgment made in good faith unless the Auction Agent shall have been negligent in ascertaining the pertinent facts necessary to make such judgment.

(d) The Auction Agent shall: (i) not be required to and shall make no representations and have no responsibilities as to the validity, accuracy, value or genuineness of any signatures or endorsements, other than its own; (ii) not be obligated to take any legal action hereunder that might, in its judgment, involve any expense or liability, unless it has been furnished with indemnity satisfactory to the Auction Agent; and (iii) not be responsible for or liable in any respect on account of the identity, authority or rights of any person executing or delivering or purporting to execute or deliver any document under this Broker-Dealer Agreement.

(e) The Auction Agent shall not be responsible or liable for any failure or delay in the performance of its obligations under this agreement arising out of or caused, directly or indirectly, by circumstances beyond its reasonable control, including, without limitation, acts of God; earthquakes; fires; floods; wars; civil or military disturbances; sabotage; epidemics; riots; interruptions, loss or malfunctions or utilities; computer (hardware or software) or communications services; accidents; labor disputes; acts of civil or military authority or governmental actions; it being understood that the Auction Agent shall use reasonable efforts which are consistent with accepted practices in the banking industry to resume performance as soon as practicable under the circumstances.

(f) In the absence of any negligence or willful default on the part of the Auction Agent, no event shall the Auction Agent be responsible or liable for special, indirect or consequential loss or damage of any kind whatsoever (including, but not limited to, loss of profit), even if the Auction Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.

8

(g) The Auction Agent has been selected by the Obligated Group Representative and the Bond Trustee has no responsibility or liability for actions or inactions of the Auction Agent.

Section 3.2.    Rights of the Auction Agent.

(a) The Auction Agent may conclusively rely upon, and shall be protected in acting or refraining from acting upon, any communication authorized hereby and upon any such written instruction, notice, request, direction, consent, report, certificate, share certificate or other instrument, paper or other document believed by it to be genuine. The Auction Agent shall not be liable for acting in good faith upon any such communication made by telephone or facsimile or other electronic communication acceptable to the parties, which the Auction Agent reasonably believes to have been given by the particular party or parties. To the extent permitted by law, the Auction Agent may record telephone communications with the Broker-Dealers, and each of such Broker-Dealers may record telephone communications with the Auction Agent.

(b) The Auction Agent may consult with counsel of its choice (provided that such selection is made with reasonable care), and the advice of such counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by it hereunder in good faith and in reliance thereon.

(c) The Auction Agent shall not be required to advance, expend or risk its own funds or otherwise incur or become exposed to financial liability in the performance of its duties hereunder.

(d) The Auction Agent may perform its duties and exercise its rights hereunder either directly or by or through agents or attorneys and shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed by it with due care.

Section 3.3.    Rights of the Auction Agent.  The Auction Agent makes no representation as to and assumes no responsibility for the correctness of the recitals in, or the validity, adequacy or accuracy of this Broker-Dealer Agreement, the Auction Agreement, the ARCs Bonds, any offering document used to make offers or sales thereof or any other agreement or instrument executed in connection with the transactions contemplated herein.

## ARTICLE IV

## DISCLOSURE; INDEMNIFICATION

Section 4.1.    Disclosure.

(a) The Obligated Group Representative agrees to supply to BD, at the Obligated Group Representative's expense, such number of copies of the Official Statement dated August 21, 2003 (the "Official Statement"), as BD shall reasonably request from time to time and, upon request of BD, to amend the Official Statement so that the Official Statement will not contain any untrue statement of a material fact or omit to state a

9

material fact necessary in order to make the statements therein, in light of the circumstances under which they are made, not misleading.

(b) If BD determines (upon consultation and mutual agreement with the Obligated Group Representative) that it is necessary or desirable to use a disclosure statement (other than the Official Statement), relating specifically to the ARCs Bonds (a "Disclosure Statement") in connection with the solicitation of Orders for the ARCs Bonds, BD will notify the Obligated Group Representative, and the Obligated Group Representative will provide BD with a Disclosure Statement reasonably satisfactory to BD and its counsel. The Obligated Group Representative will supply BD, at the Obligated Group Representative's expense, with such number of copies of such Disclosure Statement as BD requests from time to time and will, upon request of BD, amend such Disclosure Statement (as well as the documents incorporated by reference therein) so that such Disclosure Statement will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein, in light of the circumstances under which they are made, not misleading. In connection with the use of any Disclosure Statement by BD in its solicitation of Orders for the Bonds (other than the Official Statement), the Obligated Group Representative will furnish to BD such certificates, accountants' letters and opinions of counsel as would be customary in a public offering of tax-exempt securities underwritten by BD. In addition, the Obligated Group Representative will, at its own expense, take all steps reasonably requested by BD that BD or its counsel may consider necessary or desirable to effect compliance with applicable federal or state securities laws.

Section 4.2.   Indemnification and Contribution.

(a) To the extent, if any, that a court of competent jurisdiction would enforce such agreement as not contrary to law or public policy, the Obligated Group Representative agrees to indemnify and hold harmless BD and each person, if any, who controls (as such term is defined in Section 15 of the Securities Act of 1933, as amended, the "1933 Act") BD against any and all losses, claims, damages, expenses, and liabilities whatsoever arising out of any untrue statement or alleged untrue statement in the Official Statement, relating to the ARCs of a material fact or any omission or alleged omission of any material fact necessary to make the statements therein, at the time and in light of the circumstances under which they were made, not misleading, including, without limiting the generality of the foregoing, the aggregate amount paid in settlement of any litigation commenced or threatened or of any claim whatsoever based upon any such untrue statement or omission or alleged untrue statement or omission, if such settlement is effected with the written consent of the Obligated Group Representative, and any amount reasonably incurred in investigating, preparing, or defending against any litigation commenced or threatened or any claim based upon any such untrue statement or omission or alleged untrue statement or omission, provided, however, that the Obligated Group Representative shall not indemnify BD for any losses, claims, damages, expenses and liabilities arising from BD's violation of any applicable "blue sky" law of any state. In case any claim should be made or action brought against any of BD or any controlling person (as aforesaid) based upon the Official Statement, in respect of which indemnity may be sought against the Obligated Group Representative, BD or such controlling person shall, as a condition to its right to indemnification hereunder, promptly notify the

10

Obligated Group Representative in writing setting forth the particulars of such claim or action and the Obligated Group Representative shall assume the defense thereof, including the retaining of counsel and the payment of all expenses. BD or any such controlling person shall have the right to retain separate counsel in any such action and to participate in the defense thereof, but the fees and expenses of such counsel shall be at BD's expense or the expense of such controlling person unless the retaining of such counsel has been specifically authorized in writing by the Obligated Group Representative or counsel retained by the Obligated Group Representative has advised BD that the representation of the two parties would constitute a conflict.

(b) BD will indemnify and hold harmless the Obligated Group Representative, each of its respective trustees, officers and employees and each person who controls the Obligated Group Representative within the meaning of Section 15 of the Securities Act to the same extent as the foregoing indemnity from the Obligated Group Representative to BD, but only with reference to written information relating to BD furnished by BD specifically for use in preparation of the Official Statement or Disclosure Statement.

(c) In order to provide for just and equitable contribution in circumstances in which the indemnity agreement provided for in (a) and (b) above is for any reason held to be unavailable in accordance with its terms, the Obligated Group Representative and BD shall contribute to the aggregate losses, liabilities, claims, damages and expenses of the nature contemplated by said indemnity agreement incurred by the Obligated Group Representative and BD in such proportions that BD is responsible for that portion represented by the percentage that the underwriter's commission on the sale of the ARCs Bonds bears to the initial public offering price appearing on the cover page of the Official Statement and the Obligated Group Representative is responsible for the balance. In addition, each person, if any, who controls BD or the Obligated Group Representative, as the case may be within the meaning of Section 15 of the 1933 Act shall have the same rights to contribution.

(d) Notwithstanding the foregoing paragraphs (a), (b) and (c), no person guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the 1933 Act) shall be entitled to indemnification or to contribution from any person who was not guilty of such fraudulent misrepresentation.

## ARTICLE V

## MISCELLANEOUS

Section 5.1.   Termination.   BD may be removed by the Auction Agent at the written direction of the Obligated Group Representative, or may resign at any time, upon five Business Days' notice to the Auction Agent and the Obligated Group Representative; provided, however, that BD may resign immediately if it determines, in its reasonable judgment, that for any reason, including, without limitation, (i) a pending or proposed change in applicable tax laws, (ii) a material adverse change in the financial condition of the Obligated Group Representative, (iii) hostilities involving the United States, (iv) a downgrade in the rating of the ARCs, or (v) an imposition of material restrictions on the ARCs or similar obligations, it is not advisable to attempt to Auction the ARCs. The Auction Agent upon the written direction of the Obligated

Group Representative with the consent of the Issuer, which shall not be unreasonably withheld, may terminate this Broker-Dealer Agreement at any time on five Business Days' notice to the other parties hereto; provided further that if the BD in this Broker-Dealer Agreement is UBS Financial Services Inc., the Auction Agent may not terminate this Broker-Dealer Agreement without the prior written consent of the Issuer and the Obligated Group Representative, which consent shall not be unreasonably withheld or delayed; and provided further that this Broker-Dealer Agreement shall terminate upon the resignation or removal of the BD pursuant to this Section 4.1 or termination of the Auction Agreement.

Section 5.2.    Participant.  BD is and for the term of this Broker-Dealer Agreement shall remain a member of, a participant in, or an affiliate of such a member or participant in DTC; and will give the Auction Agent, each other Broker-Dealer, the Issuer, the Obligated Group Representative and the Bond Trustee two Business Days' notice if it ceases to be so or if it changes its participation or affiliation to a different Bond Depository.

Section 5.3.    Communications.  Except for (i) communications authorized to be by telephone pursuant to this Broker-Dealer Agreement or the Auction Procedures and (ii) communications in connection with Auctions (other than those expressly required to be in writing) all notices, requests and other communications to any party hereunder shall be in writing (including telecopy or similar writing or other electronic communication acceptable to the parties) and shall be given to such party, addressed to it, at its address or telecopy number set forth below and, where appropriate, reference the particular Auction to which such notice relates:

| If to BD addressed: | UBS FINANCIAL SERVICES INC. |
| | 1285 Avenue of the Americas, 10th Floor |
| | New York, New York 10019 |
| | Attention:  Manager, Short Term Desk |
| | Telecopier No.: (212) 713-2121 |
| | Telephone No.: (212) 713-4692 |
| | |
| If to the Auction Agent addressed: | DEUTSCHE BANK TRUST COMPANY AMERICAS |
| | Corporate Trust & Agency Service |
| | 60 Wall Street, 27th Floor |
| | New York, New York 10005 |
| | Telecopier No.: (212) 797-8600 |
| | Telephone No.: (212) 250-6645 |
| | |
| If to the Issuer addressed: | West Virginia Hospital Finance Authority |
| | 1 Players Club Drive |
| | Charleston, West Virginia 25311 |
| | Attention: Executive Director |
| | Telecopier No.:  (304) 558-0538 |
| | Telephone No.:  (304) 558-0549 |

If to the Obligated Group Representative    West Virginia University Hospitals, Inc.
addressed:    Medical Center Drive
    P.O. Box 8059
    Morgantown, West Virginia 26506
    Attention: Chief Financial Officer
    Telecopier No.: (304) 598-4124
    Telephone No.: (304) 598-4554

or such other address, or telecopy number or e-mail address as such party may hereafter specify for such purpose by notice to the other party. Each such notice, request or communication shall be effective (i) if given by telecopier, when such telecopy is transmitted to the telecopy number specified herein or (ii) if given by any other means, when delivered at the address specified herein. Communications shall be given on behalf of BD by a BD Officer and on behalf of the Auction Agent by an Authorized Officer.

Section 5.4. Entire Agreement. This Broker-Dealer Agreement, and the other agreements and instruments executed and delivered in connection with the issuance of the ARCs, contain the entire agreement between the parties relating to the subject matter hereof, and there are no other representations, endorsements, promises, agreements or understandings, oral, written or inferred, between the parties relating to the subject matter hereof.

Section 5.5. Benefits; Successors and Assigns. This Broker-Dealer Agreement shall be binding upon, inure to the benefit of, and be enforceable by, the respective successors and assigns of BD and the Auction Agent. Nothing in this Broker-Dealer Agreement, express or implied, shall give to any person, other than the Auction Agent and BD and their respective successors and assigns, any benefit of any legal or equitable right, remedy or claim under this Broker-Dealer Agreement, other than the rights expressly granted to the Obligated Group Representative herein.

Section 5.6. Amendment; Waiver.

(a) This Broker-Dealer Agreement shall not be deemed or construed to be modified, amended, rescinded, canceled or waived, in whole or in part, except by a written instrument signed by a duly authorized representative of the parties hereto and consented to in writing by a duly authorized officer of the Obligated Group Representative.

(b) Failure of any party to this Broker-Dealer Agreement to exercise any right or remedy hereunder in the event of a breach of this Broker-Dealer Agreement by any other party shall not constitute a waiver of any such right or remedy with respect to any subsequent breach.

Section 5.7. Severability. If any clause, provision or section of this Broker-Dealer Agreement shall be ruled invalid or unenforceable by any court of competent jurisdiction, the invalidity or unenforceability of such clause, provision or section shall not affect any of the remaining clauses, provisions or sections hereof.

Section 5.8.    Execution in Counterparts.    This Broker-Dealer Agreement may be executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument.

Section 5.9.    Governing Law.  This Broker-Dealer Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to conflict of laws principles. Each of the parties hereto also irrevocably waives all right to trial by jury in any action, proceeding or counterclaim arising out of this Agreement or the transactions contemplated hereby.

Section 5.10.  Limitation of Liability.

NOTWITHSTANDING ANY OTHER PROVISION HEREIN TO THE CONTRARY BUT SUBJECT TO ANY EXPLICIT WRITTEN CONTEMPORANEOUS OR SUBSEQUENT AGREEMENT, NEITHER THE ISSUER, THE BOND TRUSTEE NOR THE AUCTION AGENT SHALL HAVE ANY OBLIGATION TO PAY THE FEES, COSTS OR EXPENSES OF THE AUCTION AGENT OR BD.

Section 5.11.  No Implied Duties.  Nothing contained in this Broker-Dealer Agreement, the Bond Indenture or the Auction Agreement shall be deemed to imply any duties, covenants or obligations on the part of the Obligated Group Representative not otherwise expressly set forth herein or therein.

IN WITNESS WHEREOF, the parties hereto have caused this Broker-Dealer Agreement to be duly executed and delivered by their proper and duly authorized officers as of the date first above written.

DEUTSCHE BANK TRUST COMPANY AMERICAS,
as Auction Agent

By: _Linda Reale_

Its: _Vice President_

UBS FINANCIAL SERVICES INC.

By: _____

Its: _Managing Director_

UBS FINANCIAL SERVICES INC.

By: _Barbara McCuddy_

Its: _First Vice President_

WEST VIRGINIA UNIVERSITY HOSPITALS, INC.

By: _Bruce M. Clymonds_

Its: _____PRESIDENT_____

15

## EXHIBIT A

### SETTLEMENT PROCEDURES FOR ARCs

Capitalized terms used herein shall have the respective meanings specified in the Bond Indenture and the Broker-Dealer Agreement/

(a) No later than 3:00 P.M. on each Auction Date, the Auction Agent shall notify by telephone or other electronic communication acceptable to the parties the Broker-Dealers that participated in the Auction held on such Auction Date and submitted an Order on behalf of any Existing Holder or Potential Holder of:

(i)     the Auction Rate fixed for the succeeding Auction Period;

(ii)    whether Sufficient Clearing Bids existed for the determination of the Winning Bid Rate;

(iii)   if such Broker-Dealer (a "Seller's Broker-Dealer'") submitted a Bid or a Sell Order on behalf of an Existing Holder, whether such Bid or Sell Order was accepted or rejected, in whole or in part, and the principal amount of ARCs, if any, to be sold by such Existing Holder;

(iv)    if such Broker-Dealer (a "Buyer's Broker-Dealer") submitted a Bid on · behalf of a Potential Holder, whether such Bid was accepted or rejected, in whole or in part, and the principal amount of ARCs, if any, to be purchased by such Potential Holder;

(v)     if the aggregate principal amount of ARCs to be sold by all Existing Holders on whose behalf such Broker-Dealer submitted Bids or Sell Orders exceeds the aggregate principal amount of ARCs to be purchased by all Potential Holders on whose behalf such Broker-Dealer submitted a Bid, the name or names of one or more other Buyer's Broker-Dealers (and the Participant, if any, of each such other Buyer's Broker-Dealer) acting for one or more purchasers of such excess principal amount of ARCs and the principal amount of ARCs to be purchased from one or more Existing Holders on whose behalf such Broker-Dealer acted by one or more Potential Holders on whose behalf each of such other Buyer's Broker-Dealers acted; and

(vi)    if the principal amount of ARCs to be purchased by all Potential Holders on whose behalf such Broker-Dealer submitted a Bid exceeds the amount of ARCs to be sold by all Existing Holders on whose behalf such Broker-Dealer submitted a Bid or a Sell Order, the name or names of one or more Seller's Broker-Dealers (and the Participant, if any, of each such Seller's Broker-Dealer) acting for one or more sellers of such excess principal amount of ARCs and the principal amount of ARCs to be sold to one or more Potential Holders on whose behalf such Broker-Dealer acted by one or more Existing Holders on whose behalf each of such Seller's Broker-Dealers acted;

(vii)   unless previously provided, a list of all Applicable Rates and related Auction Periods (or portions thereof) since the last Interest Payment Date; and

(viii)   the Auction Date for the next succeeding Auction.

(b) On each Auction Date, each Broker-Dealer that submitted an Order on behalf of any Existing Holder or Potential Holder shall:

(i)   advise each Existing Holder and Potential Holder on whose behalf such Broker-Dealer submitted a Bid or Sell Order in the Auction on such Auction Date whether such Bid or Sell Order was accepted or rejected, in whole or in part;

(ii)   instruct each Potential Holder on whose behalf such Broker-Dealer submitted a Bid that was accepted, in whole or in part, to instruct such Bidder's Participant to pay to such Broker-Dealer (or its Participant) through DTC the amount necessary to purchase the principal amount of ARCs to be purchased pursuant to such Bid against receipt of such principal amount of ARCs;

(iii)   in the case of a Broker-Dealer that is a Seller's Broker-Dealer, instruct each Existing Holder on whose behalf such Broker-Dealer submitted a Sell Order that was accepted, in whole or in part, or a Bid that was accepted, in whole or in part, to instruct such Existing Holder's Participant to deliver to such Broker-Dealer (or its Participant) through DTC the principal amount of ARCs to be sold pursuant to such Bid or Sell Order against payment therefor;

(iv)   advise each Existing Holder on whose behalf such Broker-Dealer submitted an Order and each Potential Holder on whose behalf such Broker-Dealer submitted a Bid of the Auction Rate for the next Interest Period;

(v)   advise each Existing Holder on whose behalf such Broker-Dealer submitted an Order of the next Auction Date; and

(vi)   advise each Potential Holder on whose behalf such Broker-Dealer submitted a Bid that was accepted, in whole or in part, of the next Auction Date.

(c) On the basis of the information provided to it pursuant to paragraph (a) above, each Broker-Dealer that submitted a Bid or Sell Order in an Auction is required to allocate any funds received by it pursuant to paragraph (b)(ii) above, and any ARCs received by it pursuant to paragraph (b)(iii) above, among the Potential Holders, if any, on whose behalf such Broker-Dealer Submitted Bids, the Existing Holders, if any, on whose behalf such Broker-Dealer submitted Bids or Sell Orders in such Auction, and any Broker-Dealers identified to it by the Auction Agent following such Auction pursuant to paragraph (a)(v) or (a)(vi) above.

(d) On each Auction Date:

(i)   each Potential Holder and Existing Holder with an Order in the Auction on such Auction Date shall instruct its Participant as provided in (b)(ii) or (b)(iii) above, as the case may be;

A-2

(ii)     each Seller's Broker-Dealer that is not a Participant in DTC shall instruct its Participant to (A) pay through DTC to the Participant of the Existing Holder delivering ARCs to such Broker-Dealer following such Auction pursuant to (b)(iii) above the amount necessary, including accrued interest, if any, to purchase such ARCs against receipt of such ARCs, and (B) deliver such ARCs through DTC to a Buyer's Broker-Dealer (or its Participant) identified to such Seller's Broker-Dealer pursuant to (a)(v) above against payment therefor; and

(iii)     each Buyer's Broker-Dealer that is not a Participant in DTC shall instruct its Participant to (A) pay through DTC to a Seller's Broker-Dealer (or its Participant) identified following such Auction pursuant to (a)(vi) above the amount necessary, including accrued interest, if any, to purchase the ARCs to be purchased pursuant to (b)(ii) above against receipt of such ARCs, and (B) deliver such ARCs through DTC to the Participant of the purchaser thereof against payment therefor.

(e) On the first Business Day of the Interest Period next succeeding each Auction Date:

(i)     each Participant for a Bidder in the Auction on such Auction Date referred to in (d)(i) above shall instruct DTC to execute the transactions described under (b)(ii) or (b)(iii) above for such Auction, and DTC shall execute such transactions;

(ii)     each Seller's Broker-Dealer or its Participant shall instruct DTC to execute the transactions described in (d)(ii) above for such Auction, and DTC shall execute such transactions; and

(iii)     each Buyer's Broker-Dealer or its Participant shall instruct DTC to execute the transactions described in (d)(iii) above for such Auction, and DTC shall execute such transactions.

(f) If an Existing Holder selling ARCs in an Auction fails to deliver such ARCs (by authorized book-entry), a Broker-Dealer may deliver to the Potential Holder on behalf of which it submitted a Bid that was accepted a principal amount of ARCs that is less than the principal amount of ARCs that otherwise was to be purchased by such Potential Holder (but only in Authorized Denominations). In such event, the principal amount of ARCs to be so delivered shall be determined solely by such Broker-Dealer (but only in Authorized Denominations). Delivery of such lesser principal amount of ARCs shall constitute good delivery. Notwithstanding the foregoing terms of this paragraph (f), any delivery or nondelivery of ARCs, which shall represent any departure from the results of an Auction, as determined by the Auction Agent, shall be of no effect unless and until the Auction Agent shall have been notified of such delivery or nondelivery in accordance with the provisions of the Auction Agreement and the Broker-Dealer Agreement.

**EXHIBIT B**

**ORDER FORM**

(Submit only one Order on this Order Form)
[Applicable Series of ARCs]

Deutsche Bank Trust Company Americas

_____

Attention: _____

_____

     Date of Auction

The undersigned Broker-Dealer submits the following Order on behalf of the Bidder listed below:

Name of Bidder: _____

Bidder places the Order listed below covering the ARCs indicated (complete only one blank):

     $_____ ARCs now held by Bidder (an Existing Holder), and the Order is a (check one):

          ____ Hold Order; or

          ____ Bid at rate of ____%; or

          ____ Sell Order.

or

     $_____ ARCs not now held by Bidder (a Potential Holder), and the Order is a Bid at a rate of ____%.

| Notes: | (1) | If submitting more than one Order for one Bidder, use additional Order Forms. |
|---|---|---|
| | (2) | If one or more Orders covering in the aggregate more than the number of Outstanding ARCs held by any Existing Holder are submitted, such Orders shall be considered valid in the order or priority set forth in the Auction Procedures. |

B-1

(3)     A Hold Order may be placed only by an Existing Holder covering a
        number of Outstanding ARCs not greater than the number of Outstanding
        ARCs currently held.

(4)     Potential Holders may make only Bids, each of which must specify a rate.
        If more than one Bid is submitted on behalf of any Potential Holder, each
        Bid submitted shall be a separate Bid with the rate specified.

(5)     Bids may contain no more than three figures to the right of the decimal
        point.

(6)     An Order must be submitted in integral multiples of $50,000.

Name of Broker-Dealer: _____

By: _____

## EXHIBIT C

## TRANSFER FORM

(To be used only for transfers of ARCs made
other than pursuant to an Auction)

[Applicable Series of ARCs Bonds]

TRANSFER FORM

Deutsche Bank Trust Company Americas

_____

Attention: _____

_____, ____

Check I, II or III

_____ I.     We are the Existing Holder named below.

_____ II.    We are the Participant for such Existing Holder.

_____ III.   We are a Broker-Dealer for such Existing Holder.

We hereby notify you that the Existing Holder named below has transferred:

$_____      ARCs* to_____

Complete either I or II

I.     Corporate Name of Existing Holder:

By:    _____
       Printed Name:
       Title:

C-1

II.     Corporate Name of Existing Holder:

_____

Name of Agent Member or Broker-Dealer
Submitting this notice:

_____

By:     _____

Printed Name:
Title:

_____

*ARCs may only be transferred in integral multiples of $50,000.

## EXHIBIT D

## NOTICE OF FAILURE TO DELIVER

(To be used for failure to deliver
sold pursuant to an Auction)

[Applicable Series of ARCs Bonds]

NOTICE OF FAILURE TO DELIVER

Deutsche Bank Trust Company Americas

_____ _____

Attention: _____ _____

Complete either I or II                          _____, _____

I.    We are a Broker-Dealer for _____ (the "Purchaser"), who was
      to purchase $_____ _____ ARCs* in the Auction held on _____ _____.

II.   We are a Broker-Dealer for _____ (the "Seller"), who was to
      sell $_____ ARCs* in the Auction held on ___ _____.

We hereby notify you that (check one) -

_____     the Seller failed to deliver such ARCs to us.

_____     the Purchaser failed to make payment to us upon delivery of such ARCs.

_____     the following Broker-Dealer failed to deliver to us such ARCs:

_____     the following Broker-Dealer failed to make payment to us upon delivery of such
           ARCs:

                         Name: _____
                         (Name of Broker-Dealer submitting this notice)

                         By:_____ _____
                         Printed Name:
                         Title:

_____
*ARCs may only be transferred in integral multiples of $50,000.

D-1

## EXHIBIT E
## TO BROKER - DEALER AGREEMENT

LISTING OF EXISTING OWNERS OF ARCs

[Applicable Series of ARCs Bonds]

_____
_____
_____
Attention:_____

     The undersigned Broker-Dealer hereby provides the names and related principal amounts of each of its customers that it believes is an Existing Holder of ARCs:

| Name of Existing Holder | Principal Amount of ARCs |
|---|---|

Name of Broker-Dealer:

By: _____

     Name:
     Title:

E-1