# Exhibit H

BROKER-DEALER AGREEMENT

Among

DEUTSCHE BANK TRUST COMPANY AMERICAS,
As Auction Agent

And

UBS FINANCIAL SERVICES INC..

And

WEST VIRGINIA UNIVERSITY HOSPITALS, INC..

Dated as of January 1, 2005

| |
|---|
| $30,525,000<br>West Virginia Hospital Finance Authority<br>Hospital Revenue Bonds<br>(West Virginia University Hospitals, Inc.)<br>Auction Rate Certificates (ARCs[SM]) 2005 Series A |
| $29,475,000<br>West Virginia Hospital Finance Authority<br>Hospital Revenue Bonds<br>(West Virginia University Hospitals, Inc.)<br>Auction Rate Certificates (ARCs[SM]) 2005 Series B |

This instrument was prepared by:

GOODWIN & GOODWIN, LLP
300 Summers Street, Suite 1500
Charleston, West Virginia 25301

i

**TABLE OF CONTENTS**

ARTICLE I
DEFINITIONS AND RULES OF CONSTRUCTION

Section 1.1    Terms Defined by Reference to the Bond Indenture ...........................................2
Section 1.2    Terms Defined Herein...................................................................................2
Section 1.3    Rules of Construction ..................................................................................2
Section 1.4    Warranties of BD ........................................................................................3

ARTICLE II
THE AUCTION

Section 2.1    Purpose; Incorporation by Reference of Auction Procedures and Settlement
               Procedures...................................................................................................3
Section 2.2    Preparation for Each Auction........................................................................4
Section 2.3    Auction Schedule; Method of Submission of Orders ........................................4
Section 2.4    Notices ......................................................................................................6
Section 2.5    Compensation .............................................................................................6
Section 2.6    Settlement ..................................................................................................7
Section 2.7    Submission Processing Representation............................................................7

ARTICLE III
THE AUCTION AGENT

Section 3.1    Duties and Responsibilities of the Auction Agent .............................................8
Section 3.2    Rights of the Auction Agent ..........................................................................8

ARTICLE IV
DISCLOSURE; INDEMNIFICATION

Section 4.1    Disclosure ..................................................................................................9
Section 4.2    Indemnification and Contribution....................................................................9

ARTICLE V
MISCELLANEOUS

Section 5.1    Termination...............................................................................................11
Section 5.2    Participant ................................................................................................11
Section 5.3    Communications ........................................................................................11
Section 5.4    Entire Agreement ......................................................................................13
Section 5.5    Benefits; Successors and Assigns .................................................................13
Section 5.6    Amendment; Waiver ...................................................................................13
Section 5.7    Severability ..............................................................................................13

Section 5.8    Execution in Counterparts...................................................................13
Section 5.9    Governing Law ....................................................................................13
Section 5.10   Limitation of Liability.........................................................................14
Section 5.11   No Implied Duties...............................................................................14

EXHIBIT A - Settlement Procedures of Auction Bonds
EXHIBIT B - Order Form
EXHIBIT C - Transfer Form
EXHIBIT D - Notice of Failure to Deliver

## BROKER-DEALER AGREEMENT

This is a **BROKER-DEALER AGREEMENT** dated as of January 1, 2005 (the "Broker-Dealer Agreement"), between (i) Deutsche Bank Trust Company Americas (the "Auction Agent"), not in its individual capacity but solely as agent of The Bank of New York (the "Bond Trustee"), as Bond Trustee under the Bond Indenture dated as of January 1, 2005 (the "Bond Indenture"), from the West Virginia Hospital Finance Authority (the "Authority"), pursuant to authority granted to the Auction Agent in the Auction Agreement dated as of January 1, 2005 (the "Auction Agreement") between the Bond Trustee and the Auction Agent; (ii) UBS Financial Services Inc. ("BD") and (iii) West Virginia University Hospitals, Inc., a West Virginia nonstock, not-for-profit corporation (the "Obligated Group Agent").

## RECITALS

**WHEREAS**, the Authority is issuing its(i) $30,525,000 Hospital Revenue Bonds (West Virginia University Hospitals, Inc.) 2005 Series A Auction Rate Certificate (ARCs$^{(sm)}$) (the "2005 A Bonds") and (ii) $29,475,000 Hospital Revenue Bonds (West Virginia University Hospitals, Inc.) 2005 Series B Auction Rate Certificate (ARCs$^{(sm)}$) (the "2005 B Bonds," or the "Auction Bonds"); and

**WHEREAS**, BD is to perform certain duties set forth herein with respect to the Auction Bonds; and

**WHEREAS**, the Bond Indenture provides that, except as provided therein, the interest rate on the Auction Bonds shall be the Auction Rate which shall be, except as otherwise provided therein, the rate per annum that the Auction Agent determines to have resulted from the implementation of the Auction Procedures; and

**WHEREAS**, Deutsche Bank Trust Company Americas has been appointed as Auction Agent for purposes of the Auction Agreement, and pursuant to Section 2.8(a) of the Auction Agreement, the Obligated Group Agent has requested and directed the Auction Agent to execute and deliver this Broker-Dealer Agreement; and

**WHEREAS**, the Auction Procedures require the participation of one or more Broker-Dealers;

**NOW, THEREFORE**, the Auction Agent, as agent for the Bond Trustee, BD, for the benefit of the Existing Owners and the Potential Owners of the Auction Bonds, and the Obligated Group Agent agree as follows:

# ARTICLE I

## DEFINITIONS AND RULES OF CONSTRUCTION

Section 1.1    Terms Defined by Reference to the Bond Indenture

Capitalized terms not defined herein shall have the respective meanings specified in the Bond Indenture and the Auction Agreement.  Unless otherwise specified, section references to the Auction Agreement refer to such Sections in the Auction Agreement dated as of January 1, 2005, described above.

Section 1.2    Terms Defined Herein

As used herein and in the exhibits hereto, the following terms shall have the following meanings, unless the context otherwise requires.

(a)    "Authorized Officer" shall mean each Director, Vice President, Assistant Vice President and Associate of the Auction Agent assigned to its Trust and Securities Services and every other officer or employee of the Auction Agent designated as an "Authorized Officer" for purposes hereof in a communication to the BD.

(b)    "BD Officer" shall mean each officer or employee of BD designated as a "BD Officer" for purposes of this Broker-Dealer Agreement in a communication to the Auction Agent.

(c)    "Bond Insurer" shall mean Ambac Assurance Corporation.

(d)    "Broker-Dealer Agreement" shall mean this Broker-Dealer Agreement and any substantially similar agreement between the Auction Agent, the Obligated Group Agent and BD.

(e)    "Settlement Procedures" shall mean the Settlement Procedures for the Auction Bonds and shall be substantially in the form attached hereto as EXHIBIT A.

(f)    "Submission Deadline" shall mean 1:00 P.M., New York City time, on any Auction Date or such other time on any Auction Date by which the Broker-Dealers are required to submit Orders to the Auction Agent as specified by the Auction Agent from time to time.

(g)    "Submission Processing Deadline" shall mean the earlier of (i) 40 minutes after the Submission Deadline and (ii) the time when the Auction Agent begins to disseminate the results of the Auction to the Broker-Dealer.

(h)    "Submission Processing Representation" shall have the meaning specified in Section 2.7 hereof.

Section 1.3    Rules of Construction

Unless the context or rules indicates another or different meaning or intent, the following rules shall apply to the construction of this Broker-Dealer Agreement:

2

(a)      Words importing the singular number shall include the plural number and vice versa.

(b)      The captions and headings herein are solely for the convenience of reference and shall not constitute a part of this Broker-Dealer Agreement nor shall they affect its meaning, construction or effect.

(c)      The words "hereof," "herein," "hereto," and other words of similar import refer to this Broker-Dealer Agreement as a whole.

(d)      All references herein to a particular time of day shall be to New York City time.

(e)      Each reference to the purchase, sale or holding of "Auction Bonds" shall refer to beneficial ownership interests in Auction Bonds unless the context clearly requires otherwise.

Section 1.4      Warranties of BD

BD hereby represents and warrants that this Broker-Dealer Agreement has been duly authorized, executed and delivered by BD and that, assuming the due authorization, execution and delivery hereof by the Auction Agent, this Broker-Dealer Agreement constitutes a valid and binding agreement of BD, enforceable against it in accordance with its terms.

# ARTICLE II

## THE AUCTION

Section 2.1      Purpose; Incorporation by Reference of Auction Procedures and Settlement Procedures

(a)      The Auction Procedures will be followed by the Auction Agent for the purpose of determining the Auction Rate for each Auction Period after the Initial Period for the Auction Bonds.  Each periodic implementation of such procedures is hereinafter referred to as an "Auction".

(b)      All of the provisions contained in the Auction Procedures and the Settlement Procedures are incorporated herein by reference in their entirety and shall be deemed to be a part of this Broker-Dealer Agreement to the same extent as if such provisions were fully set forth herein.

(c)      BD agrees to act as, and assumes the obligations of, and limitations and restrictions placed upon, a Broker-Dealer under this Broker-Dealer Agreement.  BD understands that other Persons meeting the requirements specified in the definition of "Broker-Dealer" contained in the Bond Indenture may execute Broker-Dealer Agreements and participate as Broker-Dealers in Auctions.  BD agrees to handle customer orders in accordance with its respective duties under applicable securities laws and rules.

(d)      BD and other Broker-Dealers may participate in Auctions for their own accounts. The Obligated Group Agent may, however, by notice to BD and all other Broker-Dealers,

3

prohibit all of the Broker-Dealers from submitting Bids in Auctions for their own accounts, provided that Broker-Dealers may continue to submit Hold Orders and Sell Orders. Notwithstanding the foregoing, if BD is an affiliate of the Obligated Group Agent it may not submit Bids to purchase Auction Bonds in Auctions for its own account, but may submit Hold Orders and Sell Orders in Auctions with respect to Auction Bonds otherwise acquired for its own account.   The Auction Agent shall be under no duty or liability with respect to monitoring compliance with this Section 2.1(d).

Section 2.2    Preparation for Each Auction

(a)    Not later than 9:30 A.M. on each Auction Date, the Auction Agent shall advise BD by telephone or other electronic communication acceptable to the parties of the All-Hold Rate and the Auction Index.

(b)    On the Closing Date and from time to time thereafter as the Auction Agent shall request, BD shall provide the Auction Agent and, upon request, the Obligated Group Agent, with the numbers of customers that it believes are Existing Owners of Auction Bonds and the principal amount of Auction Bonds held by each of such customers.  The Auction Agent shall not disclose any such information so provided to any Person other than the Bond Trustee, the Authority, the Obligated Group Agent or BD except as otherwise required by law.

(c)    Not later than 3:00 P.M. on the Record Date preceding each Auction Date, the Auction Agent shall notify BD of any change in the aggregate principal amount of Auction Bonds, as of the opening of business on such Record Date by delivering a written notice to BD by telecopy or other electronic communication acceptable to the parties.

Section 2.3    Auction Schedule; Method of Submission of Orders

(a)    The Auction Agent shall conduct Auctions for the Auction Bonds in accordance with the schedule set forth below.  Such schedule may be changed at any time by the Auction Agent at the written direction of the Obligated Group Agent to reflect then currently accepted market practices for similar auctions. The Auction Agent shall give notice of any such change to BD, the Authority, the Obligated Group Agent, the Bond Insurer and the Bond Trustee, which notice shall be given prior to the close of business on the Business Day next preceding the first Auction Date on which any such change shall be effective. The Auction Agent will follow the Bond Market Association's Market Practice U.S. Holiday Recommendations for shortened trading days for the bond markets (the "*BMA Recommendation*") unless the Auction Agent is instructed otherwise in writing by the Obligated Group Agent.   In the event of a BMA Recommendation on an Auction Date, the Submission Deadline will be 11:30 a.m., instead of 1:00 p.m., and as a result the notice set forth in Section 2.4 will occur earlier.

| Time | Event |
|---|---|
| By 9:30 A.M. | Auction Agent advises the Broker-Dealers of the All Hold Rate, and the Auction Index, as set forth in Section 2.2(a). |
| 9:30 A.M.- 1:00 P.M. | Broker-Dealers assemble information received from each Bidder (Existing Owners or Potential Owners) and any internally initiated Broker-Dealers' Bids in accordance with the Auction Procedures set forth in Exhibit A to the Bond Indenture. |
| Not later than Submission Processing Deadline | Auction Agent accepts any Orders submitted subject to a Submission Processing Representation and makes determinations pursuant to Section 203(b) of Exhibit A to the Bond Indenture. |
| By approximately 3:00 P.M. but not later than the close of business | Submitted Bids and Submitted Sell Orders are accepted and rejected and Auction Bonds allocated as provided in Section 204 to Exhibit A of the Bond Indenture. Auction Agent gives notice of the Auction results as set forth in Section 2.4(a) hereof. |

(b)    BD agrees, for the purpose of implementing the Auctions (and thereby achieving the lowest possible interest rate on the Auction Bonds), to contact Potential Owners, including Persons that are not Existing Owners, prior to the Submission Deadline on each Auction Date to determine the principal amount of Auction Bonds, if any, that each such Potential Owner offers to purchase if the rate determined by the Auction Procedures for the next succeeding Auction Period is not less than the rate per annum requested by such Potential Owner. BD further agrees, upon request, to deliver a copy of the Auction Procedures and other relevant documents prepared for the purpose of disclosure to Potential Owner by the Authority or the Obligated Group Agent relating to the Auction Bonds to each Potential Owner prior to such Potential Owner's participation in any Auction.

(c)    Each Order shall be in writing in substantially the form attached hereto as EXHIBIT B or in such other form as may be reasonably acceptable to the Auction Agent.

(d)    BD shall deliver to the Auction Agent (i) a written notice, substantially in the form attached hereto as EXHIBIT C of transfers of Auction Bonds made through BD by an Existing Owner to another Person other than pursuant to an Auction, and (ii) a written notice, substantially in the form attached hereto as EXHIBIT D of the failure of any Auction Bonds to be transferred to or by any Person that purchased or sold Auction Bonds through BD pursuant to an Auction. The Auction Agent is not required to accept any such notice specified in this

5

subsection (d) for an Auction if it is received by it after 3:00 P.M. on the Business Day preceding such Auction.

Section 2.4    Notices

(a)    On each Auction Date, the Auction Agent shall notify BD by telephone or other electronic communication acceptable to the parties of the results of the Auction as set forth in paragraph (a) of the Settlement Procedures.  As soon as reasonably practicable thereafter, the Auction Agent shall notify BD, if so requested, in writing of the disposition of all Orders submitted by BD in the Auction held on such Auction Date.

(b)    The Auction Agent shall notify BD of any change in the Auction schedule set forth in Section 2.3(a) hereof.

(c)    BD shall notify each Existing Owner or Potential Owner on whose behalf BD has submitted an Order as set forth in paragraph (b) of the Settlement Procedures, and take such other action as is required of BD pursuant to the Settlement Procedures.

(d)    The Auction Agent shall deliver to BD after receipt all notices and certificates which the Auction Agent is required to deliver to BD pursuant to Section 2 of the Auction Agreement at the times and in the manner set forth in the Auction Agreement.

Section 2.5    Compensation

(a)    The initial Broker-Dealer Fee Rate shall equal .25 of 1% per annum.  The Broker-Dealer Fee for the Auction Bonds shall be paid by the Obligated Group Agent or the Bond Trustee and represents compensation for the services of the Broker-Dealer in facilitating Auctions for the benefit of the beneficial owners of the Auction Bonds.  The Broker-Dealer Fee Rate may be adjusted from time to time with the written approval of the Obligated Group Agent upon a written request of the Broker-Dealer delivered to the Obligated Group Agent.

(b)    On each Interest Payment Date following each Auction Date, each Broker-Dealer shall be entitled to receive an amount equal to the product of (x) .25 of 1% multiplied by (y)(A) if an Auction was held on such Auction Date, the sum of the aggregate principal amount of Auction Bonds that were (1) the subject of a valid Hold Order of an Existing Owner submitted by such Broker-Dealer, (2) the subject of a Submitted Bid of an Existing Owner submitted by such Broker-Dealer and continued to be held by such Existing Owner as a result of such Auction, (3) the subject of a Submitted Bid of a Potential Owner submitted by such Broker-Dealer and were purchased by such Potential Owner as a result of such Auction and (4) deemed to be the subject of a Hold Order by an Existing Owner that were acquired by such Existing Owner from such Broker-Dealer or (B) if an Auction was not held on such Auction Date, the aggregate principal amount of Outstanding Auction Bonds that were acquired by an Existing Owner through such Broker-Dealer, multiplied by (z) a fraction, the numerator of which is the actual number of days in the Auction Period next succeeding such Auction Date and the denominator of which is 360.  The Broker-Dealer Fee shall be calculated by the Auction Agent, which shall be conclusive absent manifest error.  Such amounts shall be communicated by the Auction Agent to the Obligated Group Agent and the Bond Trustee by 4:00 P.M., New York City time, on the Business Day immediately preceding each Interest Payment Date.  On or before noon on each

Interest Payment Date, the Obligated Group Agent or the Bond Trustee shall pay to the Auction Agent the amount due to the Broker-Dealer by wire transfer of immediately available funds to such account as the Auction Agent may designate. The amount constituting the Broker-Dealer Fee shall be held by the Auction Agent on behalf of the Broker-Dealer, and immediately upon receipt of such fee, the Auction Agent shall deliver such fee to the Broker-Dealer, pursuant to the written instructions of the Broker-Dealer. If any Existing Owner who acquired Auction Bonds through a Broker-Dealer transfers any such Auction Bonds to another Person other than through an Auction, the Broker-Dealer for the Auction Bonds so transferred shall continue to be the Broker-Dealer with respect to such Auction Bonds; provided, however, that if the transfer was effected by, or if the transferee is, another Person who has met the requirements specified in the definition of "Broker-Dealer" contained in the Auction Bonds and executed a Broker-Dealer Agreement, such Person shall be the Broker-Dealer for such Auction Bonds.

Section 2.6    Settlement

(a)    If any Potential Owner on whose behalf BD has submitted an Order fails to deliver funds with respect to any Auction, BD shall have no responsibility to but may deliver such funds to the party entitled to receive such funds. If any Existing Owner on whose behalf BD has submitted an Order fails to instruct its Agent Member to deliver the Auction Bonds subject to such Order against payment therefor, BD shall instruct such Agent Member to deliver such Auction Bonds against payment therefor. The delivery of funds by BD for the purchase of Auction Bonds by a Potential Owner, as provided above, shall not relieve such Potential Owner of any liability to BD for payment for such Auction Bonds. Notwithstanding the foregoing provisions of this Section 2.6(a), any delivery or nondelivery of Auction Bonds which represents any departure from the results of an Auction, as determined by the Auction Agent, shall be of no effect unless and until the Auction Agent shall have been notified of such delivery or non-delivery in accordance with the terms of Section 2.3(d) hereof. The Auction Agent shall have no duty or liability with respect to enforcement of this Section 2.6(a).

(b)    The Auction Agent, the Bond Trustee, the Obligated Group Agent, BD and the Authority shall have no responsibility or liability with respect to the failure of an Existing Owner, a Potential Owner or its respective Agent Member to deliver Auction Bonds or to pay for Auction Bonds sold or purchased pursuant to the Auction Procedures or otherwise.

Section 2.7    Submission Processing Representation.

Broker-Dealers may submit an Order after the Submission Deadline and prior to the Submission Processing Deadline if the Order was (i) received by the Broker-Dealer from Existing Owners or Potential Owners prior to the Submission Deadline or (ii) initiated internally by the Broker-Dealer for its own account prior to the Submission Deadline. Each Order submitted to the Auction Agent after the Submission Deadline and prior to the Submission Processing Deadline shall constitute a representation by the Broker-Dealer that such Order was (i) received from an Existing Owner or Potential Owner prior to the Submission Deadline or (ii) initiated internally by the Broker-Dealer for its own account prior to the Submission Deadline (the "Submission Processing Representation").

## ARTICLE III

## THE AUCTION AGENT

Section 3.1    Duties and Responsibilities of the Auction Agent

(a)    The Auction Agent is acting solely as agent of the Bond Trustee and owes no duties, fiduciary or otherwise, to any other person by reason of this Broker-Dealer Agreement other than the Obligated Group Agent except as expressly set forth herein, in the Bond Indenture or in the Auction Agreement, and no implied duties, fiduciary or otherwise, shall be read into this Broker-Dealer Agreement against the Auction Agent.

(b)    The Auction Agent undertakes to perform such duties and only such duties as are expressly set forth herein, or expressly incorporated herein by reference pursuant to Section 2.1(b) hereof, to be performed by it, and no implied covenants or obligations shall be read into this Broker- Dealer Agreement against the Auction Agent.

(c)    In the absence of negligence or willful misconduct on its part, the Auction Agent, whether acting directly or through agents or attorneys as provided in Section 3.2(d) hereof, shall not be liable for any action taken, suffered, or omitted or for any error of judgment made by it in the performance of its duties hereunder.  The Auction Agent shall not be liable for any error of judgment made in good faith unless the Auction Agent shall have been negligent in ascertaining the pertinent facts necessary to make such judgment.

(d)    The Auction Agent shall: (i) not be required to and shall make no representations and have no responsibilities as to the validity, accuracy, value or genuineness of any signatures or endorsements, other than its own; (ii) not be obligated to take any legal action hereunder that might, in its judgment, involve any expense or liability, unless it has been furnished with reasonable indemnity; and (iii) not be responsible for or liable in any respect on account of the identity, authority or rights of any person executing or delivering or purporting to execute or deliver any document under this Broker-Dealer Agreement.

Section 3.2    Rights of the Auction Agent

(a)    The Auction Agent may rely upon, and shall be protected in acting or refraining from acting upon, any communication authorized hereby and upon any such written instruction, notice, request, direction, consent, report, certificate, share certificate or other instrument, paper or other document believed by it to be genuine.  The Auction Agent shall not be liable for acting in good faith upon any such communication made by telephone or facsimile or other electronic communication acceptable to the parties, which the Auction Agent reasonably believes to have been given by the particular party or parties.  To the extent permitted by law, the Auction Agent may record telephone communications with the Broker-Dealers, and each of such Broker-Dealers may record telephone communications with the Auction Agent.

(b)    The Auction Agent may consult with counsel of its choice (provided that such selection is made with reasonable care), and the advice of such counsel shall be full and

complete authorization and protection in respect of any action taken, suffered or omitted by it hereunder in good faith and in reliance thereon.

(c)     The Auction Agent shall not be required to advance, expend or risk its own funds or otherwise incur or become exposed to financial liability in the performance of its duties hereunder.

(d)     The Auction Agent may perform its duties and exercise its rights hereunder either directly or by or through agents or attorneys and shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed by it with due care.

## ARTICLE IV

## DISCLOSURE; INDEMNIFICATION

Section 4.1     Disclosure

(a)     The Obligated Group Agent agrees to supply to BD, at the Obligated Group Agent's expense, such number of copies of the Authority's Official Statement dated January __, 2005, including any amendments thereto (the "Official Statement"), as BD shall reasonably request from time to time and, upon request of BD, to amend the Official Statement so that the Official Statement will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein, in light of the circumstances under which they are made, not misleading.

(b)     If BD determines (upon consultation and mutual agreement with the Obligated Group Agent) that it is necessary or desirable to use a disclosure statement (other than the Official Statement), relating specifically to the Auction Bonds (a "Disclosure Statement") in connection with the solicitation of Orders for the Auction Bonds, BD will notify the Obligated Group Agent, and the Obligated Group Agent will provide BD with a Disclosure Statement reasonably satisfactory to BD and its counsel.  The Obligated Group Agent will supply BD, at the Obligated Group Agent's expense, with such number of copies of such Disclosure Statement as BD reasonably requests from time to time and will, upon request of BD, amend such Disclosure Statement (as well as the documents incorporated by reference therein) so that such Disclosure Statement will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein, in light of the circumstances under which they are made, not misleading; provided, however, that the Obligated Group Agent shall not be required to amend such Disclosure Statement if it receives an Opinion of Counsel that such amendment is not required under applicable securities laws.  In connection with the use of any Disclosure Statement by BD in its solicitation of Orders for the Bonds (other than the Official Statement), the Obligated Group Agent will furnish to BD such certificates, accountants' letters and opinions of counsel as would be customary in a public offering of tax-exempt securities underwritten by BD.  In addition, the Obligated Group Agent will, at its own expense, take all steps reasonably requested by BD that BD or its counsel may consider necessary or desirable to effect compliance with applicable federal or state securities laws.

9

Section 4.2    Indemnification and Contribution

(a)    To the extent, if any, that a court of competent jurisdiction would enforce such agreement as not contrary to law or public policy, the Obligated Group agrees to indemnify and hold harmless BD and each person, if any, who controls (as such term is defined in Section 15 of the Securities Act of 1933, as amended, (the "1933 Act") BD against any and all losses, claims, damages, expenses, and liabilities whatsoever arising out of any untrue statement or alleged untrue statement in the Official Statement or the Disclosure Statement (as defined in Section 4.1) of a material fact or any omission or alleged omission of any material fact necessary to make the statements therein, at the time and in light of the circumstances under which they were made, not misleading, including, without limiting the generality of the foregoing, the aggregate amount paid in settlement of any litigation commenced or threatened or of any claim whatsoever based upon any such untrue statement or omission or alleged untrue statement or omission, if such settlement is effected with the written consent of the Obligated Group Agent, and any amount reasonably incurred in investigating, preparing, or defending against any litigation commenced or threatened or any claim based upon any such untrue statement or omission or alleged untrue statement or omission, provided, however, that the Obligated Group shall not indemnify BD for any losses, claims, damages, expenses and liabilities arising from BD's violation of any applicable "blue sky" law of any state. In case any claim should be made or action brought against any of BD or any controlling person (as aforesaid) based upon the Official Statement or the Disclosure Statement, in respect of which indemnity may be sought against the Obligated Group Agent, BD or such controlling person shall, as a condition to its right to indemnification hereunder, promptly notify the Obligated Group Agent in writing setting forth the particulars of such claim or action and the Obligated Group Agent shall assume the defense thereof, including the retaining of counsel and the payment of all expenses. BD or any such controlling person shall have the right to retain separate counsel in any such action and to participate in the defense thereof, but the fees and expenses of such counsel shall be at BD's expense or the expense of such controlling person unless the retaining of such counsel has been specifically authorized in writing by the Obligated Group Agent or counsel retained by the Obligated Group Agent has advised BD that the representation of the two parties would constitute a conflict.

(b)    BD will indemnify and hold harmless the Obligated Group, each of its respective trustees, officers and employees and each person who controls the Obligated Group within the meaning of Section 15 of the 1933 Act to the same extent as the foregoing indemnity from the Obligated Group Agent to BD, but only with reference to written information relating to BD furnished by BD specifically for use in preparation of the Official Statement or Disclosure Statement.

(c)    In order to provide for just and equitable contribution in circumstances in which the indemnity agreement provided for in (a) and (b) above is for any reason held to be unavailable in accordance with its terms, the Obligated Group Agent and BD shall contribute to the aggregate losses, liabilities, claims, damages and expenses of the nature contemplated by said indemnity agreement incurred by the Obligated Group Agent and BD in such proportions that BD is responsible for that portion represented by the percentage that the underwriter's discount on the sale of the Auction Bonds bears to the initial public offering price appearing on the cover page of the Official Statement and the Obligated Group Agent is responsible for the balance. In

10

addition, each person, if any, who controls BD or the Obligated Group Agent, as the case may be within the meaning of Section 15 of the 1933 Act shall have the same rights to contribution.

(d)     Notwithstanding the foregoing paragraphs (a), (b) and (c), no person guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the 1933 Act) shall be entitled to indemnification or to contribution from any person who was not guilty of such fraudulent misrepresentation.

## ARTICLE V

### MISCELLANEOUS

Section 5.1     <u>Termination</u>

BD may be removed upon five Business Days' notice at any time by the Auction Agent at the written direction of the Obligated Group Agent, with the consent of the Bond Insurer, or the Bond Insurer.  BD may resign at any time, upon 21 Business Days' notice to the Auction Agent, the Bond Insurer and the Obligated Group Agent; provided, however, that BD may resign upon five Business Days' notice if it determines, in its reasonable judgment, that for any reason, including, without limitation, (i) a pending change in applicable tax laws, (ii) a material adverse change in the financial condition of the Obligated Group, (iii) hostilities involving the United States, (iv) a downgrade in the rating of the Auction Bonds, or (v) an imposition of material restrictions on the Auction Bonds or similar obligations, it is not advisable to attempt to Auction the Auction Bonds. This Broker-Dealer Agreement shall terminate upon the resignation or removal of the BD pursuant to this Section 5.1 or the termination of the Auction Agreement.

Section 5.2     <u>Participant</u>

BD is and for the term of this Broker-Dealer Agreement shall remain a member of, a participant in, or an affiliate of such a member or participant in DTC; and will give the Auction Agent, each other Broker-Dealer, the Authority, the Obligated Group Agent and the Bond Trustee two Business Days' notice if it ceases to be so or if it changes its participation or affiliation to a different Bond Depository.

Section 5.3     <u>Communications</u>

Except for (i) communications authorized to be by telephone pursuant to this Broker-Dealer Agreement or the Auction Procedures and (ii) communications in connection with Auctions (other than those expressly required to be in writing) all notices, requests and other communications to any party hereunder shall be in writing (including telecopy or similar writing or other electronic communication acceptable to the parties) and shall be given to such party, addressed to it, at its address or telecopy number set forth below and, where appropriate, reference the particular Auction to which such notice relates:

If to BD addressed:                    UBS Financial Services Inc.
                                       1285 Avenue of the Americas, 10th Floor
                                       New York, New York 10019
                                       Attention: Manager, Short Term Desk

11

<table>
<tr><td></td><td>Telecopier No.: (212) 713-2121<br>Telephone No.: (212) 713-4692</td></tr>
</table>

|  |  |
|---|---|
| If to the Auction Agent addressed: | Deutsche Bank Trust Company Americas<br>Trust & Securities Services<br>60 Wall Street, 27th floor<br>New York, NY 10005<br>Attention: Auction Rate Securities<br>Telecopier No.: 212-797-8600<br>Telephone No.: 212-250-6645 |
| If to the Authority addressed: | West Virginia Hospital Finance Authority<br>1 Players Club Drive<br>Charleston, West Virginia 25311<br>Attention: Executive Director |
|  | with copy to:<br><br>Camden P. Siegrist, Esquire<br>Counsel to the Authority<br>Bowles Rice McDavid Graff & Love<br>600 Quarrier Street<br>Charleston, West Virginia 25235-1386 |
| If to the Obligated Group Agent addressed: | West Virginia University Hospitals, Inc.<br>Medical Center Drive<br>PO Box 8059<br>Morgantown, West Virginia 26506<br>Attention: President |
|  | with copies to:<br>Chief Financial Officer<br>General Counsel |
| If to the Bond Insurer addressed : | Ambac Assurance Corporation<br>One State Street Plaza<br>New York, New York 10004<br>Attention: Healthcare Surveillance<br>Telephone: (212) 668-0340<br>Fax: (212) 208-3404 |

or such other address, or telecopy number or e-mail address as such party may hereafter specify for such purpose by notice to the other party. Each such notice, request or communication shall

be effective (i) if given by telecopier, when such telecopy is transmitted to the telecopy number specified herein or (ii) if given by any other means, when delivered at the address specified herein. Communications shall be given on behalf of BD by a BD Officer and on behalf of the Auction Agent by an Authorized Officer.

Section 5.4    Entire Agreement

This Broker-Dealer Agreement, and the other agreements and instruments executed and delivered in connection with the issuance of the Auction Bonds, contain the entire agreement between the parties relating to the subject matter hereof, and there are no other representations, endorsements, promises, agreements or understandings, oral, written or inferred, between the parties relating to the subject matter hereof.

Section 5.5    Benefits; Successors and Assigns

This Broker-Dealer Agreement shall be binding upon, inure to the benefit of, and be enforceable by, the respective successors and assigns of the Bond Insurer, BD and the Auction Agent. Nothing in this Broker-Dealer Agreement, express or implied, shall give to any person, other than the Bond Insurer, the Auction Agent and BD and their respective successors and assigns, any benefit of any legal or equitable right, remedy or claim under this Broker-Dealer Agreement, other than the rights expressly granted to the Obligated Group Agent herein.  The Bond Insurer shall be a third-party beneficiary hereof.

Section 5.6    Amendment; Waiver

(a)     This Broker-Dealer Agreement shall not be deemed or construed to be modified, amended, rescinded, canceled or waived, in whole or in part, except by a written instrument signed by a duly authorized representative of the parties hereto and consented to in writing by a duly authorized officer of the Obligated Group Agent and the Bond Insurer.

(b)     Failure of any party to this Broker-Dealer Agreement to exercise any right or remedy hereunder in the event of a breach of this Broker-Dealer Agreement by any other party shall not constitute a waiver of any such right or remedy with respect to any subsequent breach.

Section 5.7    Severability

If any clause, provision or section of this Broker-Dealer Agreement shall be ruled invalid or unenforceable by any court of competent jurisdiction, the invalidity or unenforceability of such clause, provision or section shall not affect any of the remaining clauses, provisions or sections hereof.

Section 5.8    Execution in Counterparts

This Broker-Dealer Agreement may be executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument.

Section 5.9    Governing Law

This Broker-Dealer Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to conflict of laws principles.

Section 5.10   Limitation of Liability

NOTWITHSTANDING ANY OTHER PROVISION HEREIN TO THE CONTRARY BUT SUBJECT TO ANY EXPLICIT WRITTEN CONTEMPORANEOUS OR SUBSEQUENT AGREEMENT, NEITHER THE AUTHORITY, THE BOND TRUSTEE NOR THE AUCTION AGENT SHALL HAVE ANY OBLIGATION TO PAY THE FEES, COSTS OR EXPENSES OF THE AUCTION AGENT OR BD.

Section 5.11   No Implied Duties

Nothing contained in this Broker-Dealer Agreement, the Bond Indenture or the Auction Agreement shall be deemed to imply any duties, covenants or obligations on the part of the Obligated Group Agent not otherwise expressly set forth herein or therein.

IN WITNESS WHEREOF, the parties hereto have caused this Broker-Dealer Agreement to be duly executed and delivered by their proper and duly authorized officers as of the date first above written.

**DEUTSCHE BANK TRUST COMPANY AMERICAS,**
as Auction Agent

By: *Linda Reale*

Its: *Vice President*

By: *Aux McDiarmid*

Its: *Assistant Vice President*

**UBS FINANCIAL SERVICES INC.**

By: _____

Its: _____


By: _____

Its: _____

**WEST VIRGINIA UNIVERSITY HOSPITALS, INC., AS OBLIGATED GROUP AGENT**

By: _____

Its: _____

15

IN WITNESS WHEREOF, the parties hereto have caused this Broker-Dealer Agreement to be duly executed and delivered by their proper and duly authorized officers as of the date first above written.

**DEUTSCHE BANK TRUST COMPANY AMERICAS,**
as Auction Agent

By:_____

Its:_____

By:_____

Its:_____

**UBS FINANCIAL SERVICES INC.**

By: *Hillary Demby*

Its: *First Vice President*

By: *Barbara Osould*

Its: *First Vice President*

**WEST VIRGINIA UNIVERSITY HOSPITALS, INC., AS OBLIGATED GROUP AGENT**

By: *Bruce McClymonds*

Its: *President*

**EXHIBIT A**

**SETTLEMENT PROCEDURES FOR AUCTION BONDS**

Capitalized terms used herein shall have the respective meanings specified in the Bond Indenture and the Broker-Dealer Agreement.

(a)    On each Auction Date, the Auction Agent shall notify by telephone or other electronic communication acceptable to the parties, each Broker-Dealer that participated in the Auction held on such Auction Date and submitted an Order on behalf of any Existing Owner or Potential Owner of:

(i)    the Auction Rate fixed for the succeeding Auction Period;

(ii)    whether Sufficient Clearing Bids existed for the determination of the Winning Bid Rate;

(iii)    if such Broker-Dealer submitted a Bid or a Sell Order on behalf of an Existing Owner, whether such Bid or Sell Order was accepted or rejected, in whole or in part, and the principal amount of Auction Bonds, if any, to be sold by such Existing Owner;

(iv)    if such Broker-Dealer submitted a Bid on behalf of a Potential Owner, whether such Bid was accepted or rejected, in whole or in part, and the principal amount of Auction Bonds, if any, to be purchased by such Potential Owner;

(v)    if the aggregate principal amount of Auction Bonds to be sold by all Existing Owners on whose behalf such Broker-Dealer submitted Bids or Sell Orders is different from the aggregate principal amount of Auction Bonds to be purchased by all Potential Owners on whose behalf such Broker-Dealer submitted a Bid, the name or names of one or more other Broker-Dealers (and the Agent Member, if any, of each such other Broker-Dealer) and the principal amount of Auction Bonds to be (A) purchased from one or more Existing Owners on whose behalf such other Broker-Dealers submitted Bids or Sell Orders or (B) sold to one or more Potential Owners on whose behalf such other Broker-Dealers submitted Bids; and

(vi)    the immediately succeeding Auction Date.

(b)    On each Auction Date, each Broker-Dealer that submitted an Order on behalf of any Existing Owner or Potential Owner shall:

(i)    advise each Existing Owner and Potential Owner on whose behalf such Broker-Dealer submitted a Bid or Sell Order whether such Bid or Sell Order was accepted or rejected, in whole or in part;

(ii)    instruct each Potential Owner on whose behalf such Broker-Dealer submitted a Bid that was accepted, in whole or in part, to instruct such Potential Owner's Agent Member to pay to such Broker-Dealer (or its Agent Member) through DTC the

A-1

amount necessary to purchase the principal amount of Auction Bonds to be purchased pursuant to such Bid against receipt of such principal amount of Auction Bonds;

(iii)    instruct each Existing Owner on whose behalf such Broker-Dealer submitted a Sell Order that was accepted or a Bid that was rejected, in whole or in part, to instruct such Existing Owner's Agent Member to deliver to such Broker-Dealer (or its Agent Member) through DTC the principal amount of Auction Bonds to be sold pursuant to such Bid or Sell Order against payment therefor;

(iv)    advise each Existing Owner on whose behalf such Broker-Dealer submitted an Order and each Potential Owner on whose behalf such Broker-Dealer submitted a Bid of the Auction Rate for the next succeeding Auction Period;

(v)    advise each Existing Owner on whose behalf such Broker-Dealer submitted an Order of the Auction Date of the next succeeding Auction; and

(vi)    advise each Potential Owner on whose behalf such Broker-Dealer submitted a Bid that was accepted, in whole or in part, of the next Auction Date.

(c)    On the basis of the information provided to it pursuant to paragraph (a) above, each Broker-Dealer that submitted a Bid or Sell Order shall allocate any funds received by it pursuant to paragraph (b)(ii) above, and any Auction Bonds received by it pursuant to paragraph (b)(iii) above, among the Potential Owners, if any, on whose behalf such Broker-Dealer submitted Bids, the Existing Owners, if any, on whose behalf such Broker-Dealer submitted Bids or Sell Orders, and any Broker-Dealers identified to it by the Auction Agent pursuant to paragraph (a)(v) above.

(d)    On the Business Day after the Auction Date, the Securities Depository shall execute the transactions described above, debiting and crediting the accounts of the respective Agent Members as necessary to affect the purchase and sale of Auction Bonds as determined in the Auction.

# EXHIBIT BORDER FORM

## DEUTSCHE BANK - AUCTION RATE SECURITIES

### *BID FORM*

Telephone (212) 250-6850 (6851)
Facsimile (212) 250-6688 (6767)

The undersigned Broker/Dealer submits the following bid on behalf of the bidder listed below:

**BIDDER (If only one existing or potential holder):** _____

| | BIDDER | CURRENT POSITION | HOLD | HOLD @ RATE | SELL | BUY @ RATE |
|---|---|---|---|---|---|---|
| 1) | | | | @ | | @ |
| 2) | | | | @ | | @ |
| 3) | | | | @ | | @ |
| 4) | | | | @ | | @ |
| 5) | | | | @ | | @ |
| 6) | | | | @ | | @ |
| 7) | | | | @ | | @ |
| 8) | | | | @ | | @ |
| 9) | | | | @ | | @ |
| 10) | | | | @ | | @ |
| 11) | | | | @ | | @ |
| 12) | | | | @ | | @ |
| 13) | | | | @ | | @ |
| 14) | | | | @ | | @ |
| 15) | | | | @ | | @ |
| 16) | | | | @ | | @ |
| 17) | | | | @ | | @ |
| 18) | | | | @ | | @ |
| 19) | | | | @ | | @ |
| 20) | | | | @ | | @ |
| 21) | | | | @ | | @ |
| 22) | | | | @ | | @ |
| 23) | | | | @ | | @ |
| 24) | | | | @ | | @ |
| 25) | | | | @ | | @ |

**NAME OF BROKER/DEALER:** _____

Authorized by: _____

Name: _____

B-1

**EXHIBIT CTRANSFER FORM**

(To be used only for transfers of 2005 Bonds made
other than pursuant to an Auction)

[Applicable Series of 2005 Bonds]

TRANSFER FORM

_____
_____
Attention: _____

_____, \_\_\_\_

Check I, II or III

_____ I.   We are the Existing Owner named below.

_____ II.   We are the Agent Member for such Existing Owner.

_____ III.  We are a Broker-Dealer for such Existing Owner.

We hereby notify you that the Existing Owner named below has transferred:

$_____   2005 Bonds* to

Complete either I or II

I.   Corporate Name of Existing Owner:

By:_____
      Printed Name:
      Title:

II.  Corporate Name of Existing Owner:

_____
Name of Agent Member or Broker-Dealer
Submitting this notice:

_____

By:     _____

               Printed Name: \
               Title:

---

*2005 Bonds may only be transferred in integral multiples of $25,000.

**EXHIBIT DNOTICE OF FAILURE TO DELIVER**
(To be used for failure to deliver
sold pursuant to an Auction)

[Applicable Series of 2005 Bonds]

_____

_____

Attention: _____

Complete either I or II                                   _____, \_\_\_\_

    I.     We are a Broker-Dealer for _____(the "Purchaser"), who was
           to purchase \$_____ Auction Bonds* in the Auction held on _____

    II.    We are a Broker-Dealer for _____(the "Seller"), who was to
          sell \$_____ Auction Bonds* in the Auction held on _____.

We hereby notify you that (check one) -

_____     the Seller failed to deliver such Auction Bonds to us.

_____     the Purchaser failed to make payment to us upon delivery of such Auction Bonds.

_____     the following Broker-Dealer failed to deliver to us such Auction Bonds:

_____     the following Broker-Dealer failed to make payment to us upon delivery of such
          Auction Bonds:

                          Name:_____
                          (Name of Broker-Dealer submitting this notice)

                          By:_____
                          Printed Name:
                          Title:

_____

*2005 Bonds may only be transferred in integral multiples of \$25,000.