**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| UBS FINANCIAL SERVICES, INC. and UBS SECURITIES LLC, | : : : |
| Plaintiffs, | : : |
| - v. - | : 10 CV 4298 (VM) : |
| WEST VIRGINIA UNIVERSITY HOSPITALS, INC., UNITED HOSPITAL CENTER, INC., WEST VIRGINIA UNIVERSITY HOSPITALS-EAST, INC., CITY HOSPITAL FOUNDATION, INC., and WEST VIRGINIA UNITED HEALTH SYSTEM, INC., | : ECF Case : : : : |
| Defendants. | : |

---

# REPLY IN SUPPORT OF PLAINTIFFS' MOTION
# FOR PRELIMINARY INJUNCTION

DEBEVOISE & PLIMPTON LLP
Jeremy Feigelson
Andrew J. Ceresney
Vanessa De Simone
James B. Amler
919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Plaintiffs*

December 10, 2010

23333134v1

# **TABLE OF CONTENTS**

Argument ................................................................................................................................1

I.   THIS COURT HAS AUTHORITY TO ENJOIN THE FINRA ARBITRATION..............1

II.  THIS COURT SHOULD ENJOIN THE ARBITRATION ..................................................2

    A.   WVUH Cannot Arbitrate Because It Was Not UBS's "Customer" ........................2

        1.   The Purpose And Wording Of The FINRA Rule Support Denying "Customer" Status To WVUH Here ..............................................................2

        2.   UBS Was Not WVUH's Financial Advisor And Did Not Otherwise Provide Investment Or Brokerage Services ..............................3

        3.   The Swap Agreements Create No "Customer" Relationship ......................5

    B.   The Decisions In *J.P. Morgan Securities* Do Not Support Arbitration Here ..........6

III. THIS COURT SHOULD ENFORCE THE PARTIES' VENUE AGREEMENT ..............8

Conclusion ............................................................................................................................10

i

23333134v1

# **TABLE OF AUTHORITIES**

**CASES**

*Auer v. Robbins*, 519 U.S. 452 (1997) ............................................................................................7

*Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278 (2d Cir. 2005) ..........................................9

*Bear, Stearns & Co. v. Bennett*, 938 F.2d 31 (2d Cir. 1991) ...........................................................9

*Bensadoun v. Jobe-Riat*, 316 F.3d 171 (2d Cir. 2003) .................................................................2, 3

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
    No. 8-CV-5520 (BSJ), 2008 WL 4891229 (S.D.N.Y. Nov. 12, 2008) .....................................5

*Contemporary Fin. Solutions, Inc. v. Miller*, No. 07-cv-00793-MSK,
    2007 WL 4197588 (D. Colo. Nov. 20, 2007) ...........................................................................4

*Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193 (2000) .....................................1

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995) ............................................................7

*Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*, 264 F.3d 770 (8th Cir. 2001) ............. 3-5

*Herbert J. Sims & Co. v. Roven*, 548 F. Supp. 2d 759 (N.D. Cal. 2008) ........................................7

*Howsam v. Dean Witter Reynolds*, 537 U.S. 79 (2002) ..................................................................8

*Indian Harbor Ins. Co. v. Global Transp. Sys.*, 197 F. Supp. 2d 1 (S.D.N.Y. 2002) ......................2

*J Giordano Sec. LLC v. MedicalCV, Inc.*, No. 3:06cv365 (SRU),
    2006 WL 3000461 (D. Conn. Oct. 19, 2006) ...........................................................................9

*John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48 (2d Cir. 2001) .................................................7

*J.P. Morgan Sec., Inc. v. La. Citizens Prop. Ins. Corp.*,
    712 F. Supp. 2d 70 (S.D.N.Y. 2010) .........................................................................................6

*Kipany Prods., Ltd. v. RMH Teleservices, Inc.*, No. 97 Civ. 7599(LMN),
    1997 WL 706445 (S.D.N.Y. Nov. 13, 1997) ............................................................................2

*Maronian v. Am. Commc'ns Network, Inc.*, No. 07-CV-6314,
    2008 WL 141753 (W.D.N.Y. Jan. 14, 2008) ............................................................................2

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323 (7th Cir. 1995) ......................1

*Nat'l Planning v. Achatz*, No. 02-CV-0196E(SR),
    2002 WL 31906336 (W.D.N.Y. Dec. 17, 2002) .......................................................................8

ii

*Patten Sec. Corp. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400 (3d Cir. 1987) ........5, 9

*Royal Alliance Assocs., Inc. v. Branch Ave. Plaza, L.P.*,
   587 F. Supp. 2d 729 (E.D. Va. 2008) ...............................................................................7, 8

*Schwapp v. Avon*, 118 F.3d 106 (2d Cir. 1997) ...............................................................................4

*Sterling Fin. Inv. Group v. Hammer*, 393 F.3d 1223 (11th Cir. 2004)............................................9

*Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781 (9th Cir. 2001)..........................................1

*UBS Sec. LLC v. Voegeli*, 684 F. Supp. 2d 351 (S.D.N.Y. 2010).............................................2, 3, 6

*United States v. Eberhard*, No. 03 CR.562(RWS),
   2004 WL 616122 (S.D.N.Y. Mar. 30, 2004) ........................................................................2

*Wachovia Bank, N.A. v. VCG Special Opportunities Master Fund, Ltd.*,
   No. 08 Civ. 5655 (LTS), 2010 WL 1222026 (S.D.N.Y. Mar. 29, 2010)..................................6

*Yakin v. Tyler Hill Corp.*, 566 F.3d 72 (2d Cir. 2009).....................................................................9


**STATUTES**

9 U.S.C. § 4................................................................................................................................1


**OTHER AUTHORITIES**

FINRA 2009 ANN. FIN. REP....................................................................................................5

FINRA Code of Arbitration Procedure § 12200........................................................... 1-4

FINRA Code of Arbitration Procedure § 12213........................................................................8

*Investment Advisors to SEC: We Don't Need New Cops*, Reuters, Nov. 25, 2010.........................4

NASD Rule of Conduct 3110(f), (f)(1)-(2).................................................................................10

NASD Rule of Conduct 3110(f)(4)..............................................................................................9

**Argument**

This Court can and should enjoin the West Virginia arbitration because UBS and WVUH never agreed to arbitrate and because WVUH was not UBS's "customer" within the meaning of FINRA Rule 12200 with respect to the ARS issuances. The parties did, however, explicitly agree to a New York venue for the resolution of any disputes; this Court can and should enforce that explicit agreement.

**I.     THIS COURT HAS AUTHORITY TO ENJOIN THE FINRA ARBITRATION**

This Court has ample authority to enjoin the proposed arbitration, contrary to WVUH's contention that only the courts of West Virginia may issue an injunction. *See Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 784-85 (9th Cir. 2001) (citing *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 199 (2000) (noting that 9 U.S.C. § 4 contains "obviously permissive" venue language)). It is irrelevant whether the Court has the power to ***compel*** arbitration outside this district under 9 U.S.C. § 4, because UBS has not brought a motion to compel arbitration. The restriction that WVUH would read into the statute – prohibiting the Court from ***enjoining*** an out-of-district arbitration – is made from whole cloth.

It would be illogical and unfair to force UBS into a venue contrary to the venue selection clause in the parties' agreement and designated solely by the alleged "arbitration agreement" whose very existence UBS hotly disputes. *See Textile Unlimited*, 240 F.3d at 785-86 (holding that under the F.A.A., the California district court had authority to enjoin a Georgia arbitration; "[r]equiring a party to contest the very existence of an arbitration agreement in a forum dictated by the disputed arbitration clause would run counter to that fundamental principle" of arbitration by consent only); *cf. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 330 (7th

Cir. 1995) ("This is not a situation where a party is contesting the validity of the forum selection clause itself, or the efficacy of its operation.").[1]

## II.  THIS COURT SHOULD ENJOIN THE ARBITRATION

### A.  WVUH Cannot Arbitrate Because It Was Not UBS's "Customer"

#### 1.  The Purpose And Wording Of The FINRA Rule Support Denying "Customer" Status To WVUH Here

This Court should enjoin the arbitration because UBS and WVUH never agreed to arbitrate – more specifically, because WVUH was never UBS's "customer" under FINRA Rule 12200 with respect to the ARS issuances.  Given FINRA's investor-protection mandate, the definition of "customer" properly excludes WVUH, and is limited instead to those in a business relationship with a FINRA member "related directly to investment or brokerage services." *See Bensadoun v. Jobe-Riat*, 316 F.3d 171, 177 (2d Cir. 2003) (endorsing this definition as "helpful" guidance); *UBS Sec. LLC v. Voegeli*, 684 F. Supp. 2d 351, 355-56 (S.D.N.Y. 2010) (enjoining FINRA arbitration where parties did not have a relationship related directly to investment or brokerage services).  UBS served as underwriter for WVUH's ARS, a role entirely distinct from that of an investment advisor or broker-dealer.

FINRA's investor-protection mandate should control here.  The plain language of Rule 12200 provides little guidance because it speaks only in the negative – *i.e.*, a broker or a dealer is

---

[1]  Cases in this district cited by WVUH were not disputes over whether the parties had a valid arbitration agreement. *See United States v. Eberhard*, No. 03 CR.562 (RWS), 2004 WL 616122 (S.D.N.Y. Mar. 30, 2004) (deciding whether arbitration would conflict with prior court orders and Fifth Amendment privilege); *Indian Harbor Ins. Co. v. Global Transp. Sys.*, 197 F. Supp. 2d 1 (S.D.N.Y. 2002) (action to *compel* arbitration).  Similarly, *Kipany Products, Ltd. v. RMH Teleservices, Inc.*, No. 97 Civ. 7599(LMN), 1997 WL 706445 (S.D.N.Y. Nov. 13, 1997), was decided on personal jurisdiction grounds and is recognized as an outlier.  *See Maronian v. Am. Commc'ns Network, Inc.*, No. 07-CV-6314, 2008 WL 141753, at *7 (W.D.N.Y. Jan. 14, 2008) ("[T]he majority of courts in this Circuit have not taken [*Kipany's*] approach.").

*not* a "customer." WVUH engages in wishful thinking when it calls this a "quite clear and quite broad" affirmative definition. Opp. at 12. WVUH's interpretation can only lead to the "absurd" and "untenable" result that anyone doing business with a FINRA member *except* a broker or dealer would be deemed a "customer." *See UBS Sec.*, 684 F. Supp. 2d at 356; *see also Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*, 264 F.3d 770, 773 (8th Cir. 2001) ("[W]e do not believe the NASD Rules require … arbitration in every dispute that involves its business activities with a non-member…."). A more sensible approach in this case would be to recognize that the literal text of Rule 12200 supplies no affirmative definition of "customer," so that the definition logically should be determined in reference to FINRA's purpose and the ordinary meaning of that word as the parties likely understood it. *See Bensadoun*, 316 F.3d at 176-77 (NASD Rules must be interpreted in accordance with principles of contract interpretation).

### 2. UBS Was Not WVUH's Financial Advisor And Did Not Otherwise Provide Investment Or Brokerage Services

UBS was an underwriter and an auction broker-dealer here – that is, a self-interested counterparty – and WVUH cannot make itself a "customer" after the fact by now recasting UBS as its financial advisor. The relevant contracts make no mention of advisory services, and WVUH never paid UBS to provide advice. *See, e.g.*, De La Cruz Decl., Ex. B § 1; De La Cruz Decl., Ex. C. In its capacity as an underwriter, UBS simply bought WVUH's bonds, and earned money on the issuance transactions when and if it resold the bonds to investors. *See* De La Cruz Decl., Ex. B § 1; De La Cruz Decl., Ex. F § 1; De La Cruz Decl., Ex. G § 1. WVUH retained its own independent financial advisors for each issuance. De La Cruz Decl., Ex. A at 63; De La Cruz Decl., Ex. D at 62; De La Cruz Decl., Ex. E at 72. These arrangements do not convert WVUH into UBS's financial advisee and/or a "customer"; they confirm the opposite.

WVUH cannot obscure this conclusion, as it tries to do, by putting legal buzzwords into the mouths of its businesspeople. *See, e.g.*, Declaration of Doug Coffman ("Coffman Decl.") ¶ 11 (describing UBS as WVUH's "advisor, partner, agent, and fiduciary"). The contracts speak for themselves, as does the basic nature of any underwriting relationship. After-the-fact legal conclusions asserted by WVUH's lay witnesses merit no weight. *See Schwapp v. Avon*, 118 F.3d 106, 111 (2d Cir. 1997) ("bald assertions" and "legal conclusions" in an affidavit should not be relied upon). WVUH likewise mischaracterizes some Powerpoint slides presented by UBS as if they were the acts of a financial advisor. *See, e.g.*, Coffman Decl., Ex. C at 22 (UBS states that "UHC should be aware of the risks associated with synthetic fixed rate debt"). The slide decks (two of which are dated more than seven months before the relevant issuances) show UBS pitching its expertise to WVUH to secure a role in the transaction, and presenting a basic roadmap of an ARS issuance to WVUH. This was consistent with UBS's role as underwriter, trying to protect its own interest by ensuring that the transaction went through.

Even if UBS had been WVUH's financial advisor, that would not make WVUH into UBS's "customer" for purposes of Rule 12200, as UBS did not provide investment or brokerage services. *See Fleet*, 264 F.3d at 773 (client receiving financial advice about a merger was not a "customer" of the brokerage providing advice); *Contemporary Fin. Solutions, Inc. v. Miller*, No. 07-cv-00793-MSK, 2007 WL 4197588, at *4 (D. Colo. Nov. 20, 2007) ("[T]o be a 'customer' ... an individual must have received investment or brokerage services, not just financial advice."). The provision of financial advice could not make WVUH a "customer" of UBS in these circumstances. FINRA exists to protect investors against those who actually handle their money. *See, e.g.*, *Contemporary Fin. Solutions, Inc.*, 2007 WL 4197588, at *4; *see also Investment Advisors to SEC: We Don't Need New Cops*, Reuters, Nov. 25, 2010

(FINRA does not regulate investment advisors who are not brokers). It would make little sense to extend FINRA's protections to institutions that may receive incidental advice in the course of complex financing or banking transactions.

To conclude that a "customer" relationship arises whenever securities are issued, as WVUH urges, would open "customer" status to participants in a huge range of financial transactions that have never been considered subject to FINRA arbitration. Securities can be issued in connection with everything from mergers to IPOs to mortgage lending. FINRA exists to protect investors who buy the resulting securities. *See* FINRA 2009 ANN. FIN. REP. 2. WVUH's claim that *Fleet* supports a contrary rule (Opp. at 14) is flat wrong. *Fleet* merely noted the *Patten Securities Corp. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400 (3d Cir. 1987), case in a footnote; it did not make any sweeping pronouncements that arbitration is appropriate whenever the issuance of securities is involved. *See Fleet*, 264 F.3d at 773 n.3.

### 3. The Swap Agreements Create No "Customer" Relationship

The swap agreements provide no basis for redefining WVUH as a "customer." The counterparty to two of these swaps was UBS AG, a separate entity that is neither a party to this case nor a FINRA member. *See* Coffman Decl., Ex. A at 22, 24; Coffman Decl., Ex. C, app. 5. UBS expressly explained to WVUH that neither it nor UBS AG would serve as its "agent or fiduciary" with respect to any swap. *See* Coffman Decl., Ex. A at 24; Coffman Decl., Ex. C, app. 5. Even if a relevant UBS entity had played a direct role in the swaps, these transactions cannot make WVUH a "customer" because swaps are not securities, and FINRA derives its authority from the Securities Exchange Act of 1934. *See Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, No. 8-CV-5520 (BSJ), 2008 WL 4891229, at *5 (S.D.N.Y. Nov. 12, 2008) ("serious questions" about whether swaps, as non-securities, can form

5

the basis of a demand for FINRA arbitration required enjoining an arbitration between a hedge fund and the FINRA member that allegedly negotiated the swaps), *aff'd on other grounds*, 598 F.3d 30 (2d Cir. 2010). WVUH's only support for claiming that the swaps change the fundamental relationship between it and UBS is *Wachovia Bank, N.A. v. VCG Special Opportunities Master Fund, Ltd.*, No. 08 Civ. 5655 (LTS), 2010 WL 1222026 (S.D.N.Y. Mar. 29, 2010), a case that adopts the over-simplified "everyone but a broker or dealer is a 'customer'" approach that other courts have properly rejected. *See UBS Sec.*, 684 F. Supp. 2d at 356. *Wachovia* is also off-point because the swaps there were entered into as part of a hedge fund's investment strategy, not a public issuer's debt offering as was the case here. *See Wachovia Bank*, 2010 WL 1222026, at *1.

### B. The Decisions In *J.P. Morgan Securities* Do Not Support Arbitration Here

WVUH's attempted reliance on both the Southern District and FINRA decisions in the J.P. Morgan Securities matter is misplaced.

The reasons why *J.P. Morgan Securities, Inc. v. Louisiana Citizens Property Insurance Corp.*, 712 F. Supp. 2d 70 (S.D.N.Y. 2010), was wrongly decided are respectfully and thoroughly set out in our opening brief. In particular, *J.P. Morgan Securities* did not adequately consider the nature of an issuer-underwriter relationship or the reasonable expectations of FINRA members as the decisive factors that they should be in defining a "customer." UBS Opening Br. at 15-16. Instead *J.P. Morgan Securities* relied almost exclusively on a 1983 statement of the NASD National Arbitration Committee, even though that statement is "no longer binding[.]" *J.P. Morgan Sec.*, 712 F. Supp. 2d at 77. WVUH does not seriously respond to these arguments or offer any meaningful defense of the reasoning in *J.P. Morgan Securities*.

Instead it merely describes the decision and invites this Court to agree with it because it supports WVUH's preferred outcome.  Opp. at 14-15.  This approach lacks merit.

No deference is due to FINRA's conclusory decision that the underlying dispute in *J.P. Morgan Securities* should be arbitrated.  *See Royal Alliance Assocs., Inc. v. Branch Ave. Plaza, L.P.*, 587 F. Supp. 2d 729, 735 n.6 (E.D. Va. 2008) (declining to defer to FINRA decision where the decision "provide[d] no reason for the denial at all").  The FINRA decision in that unrelated matter reads in full: "The Director of FINRA Dispute Resolution is in receipt of Respondents' request to decline FINRA's arbitration forum.  The Director has denied the request and the case will proceed in this forum."  Declaration of Jason Burge ("Burge Decl."), Ex. C.  FINRA's conclusory decision could have been based on any number of factors, including factors unique to that case and having no application here, and may well have been issued subject to the contemporaneous realization that the injunction decision was ultimately for decision by courts, not FINRA.  This is a far cry from the comprehensive rule interpretation that guided the U.S. Supreme Court in *Auer v. Robbins*, 519 U.S. 452, 461 (1997).  *Auer* involved regulations – not SRO rules.  Here the foremost consideration should be what UBS, as a FINRA member, could have reasonably expected those rules to mean *before* it entered into these transactions. *See Herbert J. Sims & Co. v. Roven*, 548 F. Supp. 2d 759, 763 (N.D. Cal. 2008) ("['Customer'] must not be defined so broadly as to upset the reasonable expectations of FINRA members.").

Deferring to FINRA's opaque decision would effectively impose an implicit "agreement" to arbitrate after the fact.  *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 57 (2d Cir. 2001) (holding that one party's NASD membership alone is not evidence of a clear and unmistakable intent to arbitrate the issue of arbitrability).  No such "'clea[r] and unmistakabl[e]'" agreement exists here, and accordingly the arbitrability of this dispute must be decided by this Court.  *First*

*Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (alteration in original). This is not a "hoary platitude" (Opp. at 17) – it is a core principle that protects a party's right to seek redress in a court of law.

This Court alone is empowered to decide the arbitrability of this dispute even though it involves the interpretation of a FINRA Rule. UBS's FINRA membership means that it will generally be bound by FINRA's interpretations of its Rules with respect to *procedural* disputes that may arise in the course of arbitrations, absent a contrary agreement between the parties. *See Nat'l Planning v. Achatz*, No. 02-CV-0196E(SR), 2002 WL 31906336, at *2 (W.D.N.Y. Dec. 17, 2002) (extending deference to NASD rule interpretation pertaining to the selection of arbitrators in an indisputably arbitrable matter). No such deference is owed on gateway "questions of arbitrability" such as "whether the parties are bound by a given arbitration clause" and "whether an arbitration clause … applies to a particular type of controversy." *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002) (holding that NASD could interpret rule regarding timeliness of indisputably arbitrable claim because that was *not* a gateway decision regarding arbitrability, which parties expect a court to decide) (internal citations omitted). This case presents precisely the type of "question of arbitrability" that is reserved for courts. *See, e.g.*, *Royal Alliance*, 587 F. Supp. 2d at 734 (no need for deference to FINRA decision denying stay of arbitration where it related to arbitrability and the parties had not agreed to arbitrate arbitrability). This Court – and only this Court – thus can decide whether WVUH is entitled to arbitrate.

### III.   THIS COURT SHOULD ENFORCE THE PARTIES' VENUE AGREEMENT

WVUH and UBS never agreed to arbitrate, but they did explicitly agree that any disputes between them should be heard in New York. This venue agreement should be enforced. Rule

12213, which WVUH calls a "forum selection clause" (Opp. at 21), neither specifies a venue for this dispute nor constitutes an agreement by the parties to submit the venue issue to FINRA. It is merely a default rule that expressly allows for the parties' selection of venue by agreement. In this case, the parties' specific agreement to a New York County venue controls. *See Bear, Stearns & Co. v. Bennett*, 938 F.2d 31, 31-32 (2d Cir. 1991) (venue selection clause of customer agreement, and not AAA rules, governed venue, notwithstanding the parties' agreement to arbitrate under the AAA rules); *Sterling Fin. Inv. Group v. Hammer*, 393 F.3d 1223, 1225 (11th Cir. 2004) (venue selection clause in parties' agreement superseded default NASD venue rule).

WVUH's claims clearly fall within that broad venue agreement, which provides that "*all actions and proceedings* arising out of [the 2006] Broker-Dealer Agreement and any of the transactions contemplated [t]hereby *shall be brought* in the County of New York." De La Cruz Decl., Ex. I § 5.11 (emphasis added). Arbitration is a "proceeding." The parties could easily have excluded arbitration from this clause but did not do so. *See Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 76 (2d Cir. 2009) (venue clause that applied to "any dispute," but did not specify forum, was "obligatory"); *J Giordano Sec. LLC v. MedicalCV, Inc.*, No. 3:06cv365 (SRU), 2006 WL 3000461, at *1-*2 (D. Conn. Oct. 19, 2006) (venue for NASD arbitration must be determined by a separate venue agreement covering "any proceeding," because "even though the parties did not specifically reference arbitration in the forum selection clause, the clause must be read to include arbitration.").[2] Any suggestion by WVUH that the parties silently carved out arbitration from this venue clause is nonsense.

---

[2]   *Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278 (2d Cir. 2005), and *Patten Securities*, 819 F.2d 400, do not apply here; each only ruled on whether a contractual submission to a court's non-exclusive jurisdiction was sufficient to preclude arbitration altogether.

9

The New York venue provision agreed to by WVUH is part of a freely negotiated agreement between sophisticated parties. NASD Rule of Conduct 3110(f)(4) – a rule intended to protect investors opening brokerage accounts – has no application here, and WVUH offers no authority suggesting that it does.[3] *See* NASD Rule of Conduct 3110(f), (f)(1)-(2); Burge Decl., Ex. P at *23. To the contrary, Rule 3110(f) reinforces that a sophisticated issuer like WVUH is not UBS's "customer" under the FINRA Rules.

## Conclusion

For the foregoing reasons, the Court should enjoin Defendants from pursuing their claims in the FINRA arbitration and in any forum outside New York County.

Dated: New York, New York
December 10, 2010

DEBEVOISE & PLIMPTON LLP

By: /s/ Jeremy Feigelson
Jeremy Feigelson
jfeigels@debevoise.com
Andrew J. Ceresney
ajceresn@debevoise.com
Vanessa De Simone
vsdesimone@debevoise.com
James B. Amler
jbamler@debevoise.com

919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Plaintiffs*

---

[3] The three cases cited by WVUH do not even mention Rule 3110(f), nor the regulatory notices WVUH cites.