**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x

UBS FINANCIAL SERVICES, INC. and
UBS SECURITIES LLC,

                              Plaintiffs,

               - v. -

WEST VIRGINIA UNIVERSITY HOSPITALS, INC.,
UNITED HOSPITAL CENTER, INC., WEST VIRGINIA
UNIVERSITY HOSPITALS-EAST, INC., CITY
HOSPITAL FOUNDATION, INC., and WEST VIRGINIA
UNITED HEALTH SYSTEM, INC.,

                           Defendants.

------------------------------------------------------------------------x

10 CV 4298 (VM)

ECF Case

**<u>NOTICE OF APPEAL</u>**

       NOTICE is hereby given that plaintiffs UBS Financial Services, Inc. and

UBS Securities LLC appeal to the United States Court of Appeals for the Second

Circuit from all aspects and each and every part of the Order of the Honorable

Victor Marrero entered on January 13, 2011 which dismissed the case, annexed

hereto as Exhibit A (the "January 13 Order"), including without limitation the

Order entered on January 4, 2011 (annexed hereto as Exhibit B), which is

referenced in the January 13 Order and which denied preliminary injunctive relief.


[signature page follows]

Dated: New York, New York        DEBEVOISE & PLIMPTON LLP
       January 14, 2011

By: _____

      Jeremy Feigelson
      jfeigels@debevoise.com
      Andrew J. Ceresney
      ajceresn@debevoise.com
      Vanessa De Simone
      vsdesimone@debevoise.com
      James B. Amler
      jbamler@debevoise.com

      919 Third Avenue
      New York, New York 10022
      (212) 909-6000

      *Attorneys for Plaintiffs*


TO:    BAILEY & GLASSER LLP
       Thanos Basdekis/tbasdekis@baileyglasser.com
       Brian A. Glasser/bglasser@baileyglasser.com
       Michael L. Murphy/mmurphy@baileyglasser.com
       209 Capitol Street
       Charleston, West Virginia 25301
       (304) 345-6555

       FISHMAN HAYGOOD PHELPS
       WALMSLEY WILLIS & SWANSON, LLP
       James R. Swanson/jswanson@fishmanhaygood.com
       Joseph C. Peiffer/jpeiffer@fishmanhaygood.com
       Jason W. Burge/jburge@fishmanhaygood.com
       201 St. Charles Avenue, 46th Floor
       New Orleans, Louisiana 70170-4600
       (504) 586-5252

       SCHNEIDER WALLACE COTTRELL
       BRAYTON KONECKY LLP
       Garrett W. Wotkyns/gwotkyns@schneiderwallace.com
       7702 E. Doubletree Ranch Road, Suite 300
       Scottsdale, Arizona 85258
       (480) 607-4368

       *Attorneys for Defendants*

23353141v1

# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
UBS FINANCIAL SERVICES, INC. and                        :
UBS SECURITIES LLC,                                      :
                                                        :
                                    Plaintiffs,         :
                                                        :      10 CV 4298 (VM)
                    - v. -                               :
                                                        :      ECF Case
WEST VIRGINIA UNIVERSITY HOSPITALS, INC.,               :
UNITED HOSPITAL CENTER, INC., WEST VIRGINIA             :      **ORDER**
UNIVERSITY HOSPITALS-EAST, INC., CITY                   :
HOSPITAL FOUNDATION, INC., and WEST VIRGINIA            :
UNITED HEALTH SYSTEM, INC.,                             :
                                                        :
                                    Defendants.         :
-----------------------------------------------------------------x

WHEREAS, by decision and order entered January 4, 2011 (the "January 4

Order"), this Court (a) denied the motion for preliminary injunction by plaintiffs UBS

Financial Services, Inc. and UBS Securities LLC (collectively, "UBS") and (b) directed

UBS to advise the Court whether, in light of that denial, UBS contemplated any further

proceedings in this Court; and

WHEREAS, by letter dated January 11, 2011, UBS has advised that (a) it does

not contemplate further proceedings in this Court; (b) it intends to pursue an appeal to the

Second Circuit on an expedited basis; and (c) given the nature of the case, UBS believes

that appeal should be pursued on the basis of the present record and the January 4 Order,

rather than engaging in full discovery and further development of the case at the district

court level; and



WHEREAS, Defendants do not object to proceeding on the basis proposed by UBS, and, upon review of the record and all prior pleadings and proceedings in this matter to date, the Court concurs that the approach proposed by UBS is sensible and efficient,

Accordingly, it is hereby **ORDERED** that final judgment is entered in favor of Defendants, substantially for the reasons stated in the January 4 Order, and this case is dismissed, provided, however, that in consenting to entry of this order, both UBS and the Defendants reserve all rights to pursue issues on appeal.

VICTOR MARRERO, U.S.D.J.

**SO ORDERED.** The Clerk of Court is directed to terminate any pending motions in this action and to close this case.

**SO ORDERED.**

1-13-11
Date

Victor Marrero, U.S.D.J.

2

# DEBEVOISE & PLIMPTON LLP

919 Third Avenue
New York, NY 10022
Tel  212 909 6000
www.debevoise.com

Jeremy Feigelson
Partner
Tel  212 909 6230
Fax  212 521 7230
jfeigelson@debevoise.com

January 11, 2011

**BY HAND**

Hon. Victor Marrero
United States District Judge
Southern District of New York
500 Pearl Street, Room 660
New York, New York 10007

**UBS Financial Services, Inc. et al. v.**
**West Virginia University Hospitals, Inc. et al.**
**10 CV 4298 (VM)**

Dear Judge Marrero:

On behalf of plaintiffs UBS Financial Services, Inc. and UBS Securities LLC (collectively, "UBS"), we write in response to the Decision and Order dated January 4, 2011 (the "January 4 Order"). The January 4 Order required UBS to advise by today whether it contemplates further proceedings in this Court. UBS does not contemplate any such proceedings, but instead requests the entry of a final order of dismissal.

Because this case raises important issues for UBS and its industry, UBS plans to seek review by the Second Circuit on an expedited basis. We believe it would be sensible and efficient for that appeal to go forward on the basis of the present record and the January 4 Order. Given the nature of the case, it seems unlikely that discovery and full development of the case at the district court level would lead to a different outcome than is stated in the January 4 Order.

Accordingly, UBS asks that the Court enter the enclosed proposed order as soon as possible. UBS has consulted with defendants regarding this order, and they have authorized us to state that they have no objection to its entry.

Respectfully yours,

Jeremy Feigelson

Enclosure

cc:  Jason W. Burge, Esq. (by e-mail)
Athanasios Basdekis, Esq. (by e-mail)

New York  •  Washington, D.C.  •  London  •  Paris  •  Frankfurt  •  Moscow  •  Hong Kong  •  Shanghai

# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X

UBS FINANCIAL SERVICES, INC. and :
UBS SECURITIES LLC,                 :
                                    :
            Plaintiffs,             :
                                    :
     -against-                      :           10 Civ. 4298 (VM)
                                    :
WEST VIRGINIA UNIVERSITY HOSPITALS,:
INC., UNITED HOSPITAL CENTER, INC.,:            **DECISION AND ORDER**
WEST VIRGINIA UNIVERSITY           :
HOSPITALS-EAST, INC., CITY HOSPITAL:
FOUNDATION, INC., and WEST VIRGINIA:
UNITED HEALTH SYSTEM, INC.,         :
                                    :
            Defendants.             :

------------------------------------X

**VICTOR MARRERO, United States District Judge.**

West Virginia University Hospitals, Inc., United Hospital
Center, Inc., West Virginia University Hospitals-East, Inc.,
City Hospital Foundation, Inc., and West Virginia United
Health System, Inc. (collectively, "Defendants") commenced,
before the Financial Industry Regulatory Authority, Inc.
("FINRA"), an arbitration proceeding (the "FINRA Arbitration")
against UBS Financial Services, Inc. and UBS Securities, LLC.
(together, "UBS") on February 12, 2010.  UBS now moves to
restrain the Defendants from proceeding with the FINRA
Arbitration or any form of action against UBS outside of New
York County (the "Motion").  The Court has jurisdiction of the
action pursuant to 28 U.S.C. § 1332.

1

For the reasons discussed below, the Court DENIES the Motion.

## I. BACKGROUND

In 2003, 2005, and 2006, UBS advised Defendants to issue, through UBS, municipal bonds structured as auction rate securities[1] ("ARS") worth approximately $329 million. The structure proposed by UBS, which combined ARS with interest rate swaps, was expected to provide Defendants with a low interest rate of approximately four percent on the ARS. On February 12, 2010, Defendants commenced an arbitration proceeding against UBS under Rule 12200 of the FINRA Code of Arbitration Procedure for Customer Disputes ("FINRA Code"). FINRA has indicated that the anticipated location for the arbitration is Charleston, West Virginia.

In the FINRA Arbitration, Defendants contend that UBS failed to disclose, among other things, that the fixed interest rates that UBS promised Defendants were entirely dependent on UBS's continued willingness to dominate and

---

[1] ARS are variable-rate bonds whose interest rates are determined through periodic "Dutch" auctions (where an auctioneer commences the auction with a high asking price that is gradually lowered until a participant accepts the price). In the present context, investors specify the number of shares of the bond they wish to purchase and the lowest bond interest rate they are willing to accept. The bond's interest rate (the "Clearing Rate") will be the lowest rate at which there are sufficient purchasers to purchase all the securities for sale at auction. (See Mem. Supp. Pl.'s Mot. Prelim. Inj. ("Pl.'s Mem.") (Docket No. 11) at 3-4.)

manipulate the market by placing support bids at low interest rates to effectively cap the ARS interest rate at a level desirable to Defendants.[2]  UBS disputes the allegations made by Defendants, but it has not participated in the FINRA Arbitration in any way.

On October 27, 2010, UBS moved the Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure and the Federal Arbitration Act ("FAA"), 9 U.S.C. §4, for a preliminary injunction to prevent Defendants from proceeding with either (i) the FINRA Arbitration or (ii) any form of action or proceeding against UBS outside of New York County.

## II. DISCUSSION

### A. LEGAL STANDARD

The district court has wide discretion in determining whether to grant a preliminary injunction.  See J.P. Morgan Secs. Inc. v. La. Citizens Prop. Ins. Corp., 712 F. Supp. 2d 70, 75 (S.D.N.Y. 2010) (quoting Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007) (internal quotation marks omitted)).  However, a preliminary injunction is "an extraordinary and drastic remedy, one that

---

[2] An ARS auction fails when the number of securities offered for sale exceeds the number of bids for purchase.  When this occurs, the interest rate until the next auction is set pursuant to a predetermined maximum rate as determined in the bonds' offering documents.  (See Pl.'s Mem. at 4.)

should not be granted unless the movant, by a <u>clear showing</u>, carries the burden of persuasion." <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997) (emphasis in original).

A court may issue a preliminary injunction to restrain an arbitration only where the moving party demonstrates "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merit to make them a fair ground for litigation and balance of hardships tipping decidedly toward the party requesting the preliminary relief." <u>Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.</u>, 598 F.3d 30, 35 (2d Cir. 2010). To fulfil the "irreparable harm requirement, [a plaintiff] must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." <u>Freedom Holdings, Inc. v. Spitzer</u>, 408 F.3d 112, 114 (2d Cir. 2005) (internal quotation marks omitted).

Further, in determining whether a plaintiff has demonstrated a likelihood of success on the merits of the ultimate case, a court is "not called upon finally to decide the merits of the controversy. It is necessary only that the court find that the plaintiff has presented a strong prima

4

facie case to justify the discretionary issuance of preliminary relief." Gibson v. U.S. Immigration & Naturalization Serv., 541 F. Supp. 131, 137 (S.D.N.Y. 1982) (internal citation omitted). In the alternative, the "serious questions" standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs of not granting the injunction outweigh the benefits. See Citigroup Global Mkts., 598 F.3d at 35.

B. APPLICATION

    1.   Preliminary    Injunction    Restraining    FINRA
        Arbitration

        a.   Irreparable Harm

UBS argues that, as a matter of law, it will suffer irreparable harm if it is required to participate in an arbitration against its will. The Second Circuit has held that it would be irreparable harm to be "forced to expend time and resources arbitrating an issue that is not arbitrable." UBS Securities LLC v. Voegeli, 684 F. Supp. 2d 351, 355 (S.D.N.Y. 2010) (quoting Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 129 (2d Cir. 2003)).

Defendants do not dispute UBS's position on irreparable harm, and the Court finds that UBS has satisfied its burden for showing "irreparable harm." See Voegeli, 684 F. Supp. 2d at 357 (holding that plaintiff would suffer irreparable harm if compelled to participate in FINRA arbitration with non-"customers").

b.   Likelihood of Success

The question of arbitrability is resolved by courts rather than arbitrators, unless the parties have explicitly agreed otherwise. See First Option of Chicago Inc. v. Kaplan, 514 U.S. 938, 943 (1995). The parties have not done so in this case.

Pursuant to the FINRA Code, a FINRA member must arbitrate a dispute if (a) arbitration is required by a written agreement or requested by the customer, (b) the dispute is between a FINRA member or associated person of a FINRA member and its "customer," and (c) the dispute arises in connection with the business activities of the member. See FINRA Code, Rule 12200. Of the three elements listed above, two are not in dispute here. First, while no written or oral arbitration agreement exists in this case, Defendants requested arbitration under the FINRA Code, which creates a compulsory arbitration agreement of which

6

customers are intended third party beneficiaries. <u>See</u> <u>Oppenheimer & Co., Inc. v. Neidhardt</u>, No. 93 Civ. 3854, 1994 WL 176976, at *1 (S.D.N.Y. May 5, 1994), <u>aff'd</u>, 56 F.3d 352 (2d Cir. 1995). Second, UBS does not contest that the FINRA Arbitration dispute relates to its business activities. Thus, the only remaining question is whether Defendants qualify as "customers" of UBS under the FINRA Code.

The FINRA Code does not define the term "customer." Rather, it simply states that "[a] customer shall not include a broker or dealer." FINRA Code, Rule 12100(i). This "sole exclusion suggests that FINRA intended to require its members to arbitrate disputes with the full array of parties with whom they have business dealings, without limiting the scope of the rule to parties who reasonably relied on the FINRA member for impartial advice." <u>Wachovia</u> <u>Bank, N.A. v. VCG Special Opportunities Master Fund, Ltd.</u>, No. 08 Civ. 5655, 2010 WL 1222026, at *3 (S.D.N.Y. Mar. 29, 2010). Since "ambiguity in the language [of Rule 12100(i)] must be construed in favor of arbitration," courts have interpreted the term "customer" broadly. <u>John Hancock Life</u> <u>Ins. v. Wilson</u>, 254 F.3d 48, 58 (2d Cir. 2001). UBS argues that applying the FINRA definition of "customer" to mean anyone who is not a broker or dealer would lead to an

over-inclusive and absurd result.  While the Court agrees
with this argument as a general proposition, see Voegeli,
684 F. Supp. 2d at 356 (finding "absurd" defendants'
position that "since they [were] neither brokers nor
dealers, they must therefore be customers of UBS
Securities"), it is certainly not the end of the analysis.
The case upon which UBS relies in making this argument found
absurd an "interpretation of the definition of "customer"
[which] would imply that a party seeking to compel
arbitration pursuant to the FINRA rules need not have an
actual customer relationship with any FINRA member; rather,
the party need only not be a broker or dealer." Id. at 356.

In an early decision interpreting the National
Association of Securities Dealers' ("NASD") Code of
Arbitration Procedure (the "NASD Code"),[3] the Third Circuit,
relying on an interpretive statement issued by NASD's
National Arbitration Committee, held that a securities
issuer is a customer of a member firm where a dispute arises
over a proposed underwriting.  See Patten Secs. Corp., Inc.

---

[3] NASD was the predecessor to FINRA, and FINRA Rule 12200 is identical to
Rule 12200 of the NASD Code, which is itself an amended version of former
Rule 10301 of the NASD Code.  The case law interpreting Rule 10301 applies
with equal force to cases interpreting Rule 12200, as the amendment did
not effect any substantive change to the rule.  See Herbert J. Sims & Co.,
Inc. v. Roven, 548 F. Supp. 2d 759, 763 n.2 (N.D. Cal. 2008).

v. Diamond Greyhound & Genetics, Inc., 819 F.2d 400, 406 (3d Cir. 1987).

A recent case from this District further bolsters Defendants' position that they are UBS's "customers" for FINRA purposes. J.P. Morgan Securities Inc. addressed an almost identical issue. See 712 F. Supp. 2d at 73. In that case, J.P. Morgan had served as an underwriter and broker-dealer for Louisiana Citizen's issuance of ARS. Noting the Second Circuit instruction that "any ambiguity in the meaning of 'customer' ... should be construed in favor of arbitration," the court determined that "an issuer is a customer of an underwriter." Id. at 78-79. UBS does not attempt to distinguish its situation from that it issue in J.P. Morgan Securities Inc., but rather asks that the Court not be guided by that decision. However, the Court finds the reasoning in that case to be persuasive and agrees that FINRA intended for an issuer to be a customer of an underwriter.

Finally, UBS argues that Defendants should not be entitled to demand arbitration because they could not have reasonably relied on UBS for impartial advice. However, "FINRA intended to require its members to arbitrate disputes with the full array of parties with whom they have business

9

dealings, without limiting the scope of the rule to parties
who reasonably relied on the FINRA member for impartial
advice." Wachovia Bank, N.A., 2010 WL 1222026, at *3.
Large financial institutions today offer a wide spectrum of
investment, underwriting, and brokerage services.  With the
ever-increasing complexities of dealing in financial
products and their derivatives, it is not uncommon for these
institutions to play more than one role in a multi-faceted
transaction.  Here, for instance, UBS not only served as an
underwriter for Defendants on the ARS issuance, proposing
that Defendants combine ARS with interest rate swaps, it
also participated on its own account in the subsequent ARS
auctions.  To find a relationship of "impartial advice" to
be a prerequisite under these circumstances would defeat the
purpose of Rule 12200.  Therefore, while UBS's argument may
be relevant to the merits of the issue to be arbitrated, it
is inapposite to the question of Defendants' status as
"customers." See id. at *3.

     At the preliminary injunction stage, the Court is not
called upon to make an ultimate determination on the merits
of the controversy.  Nevertheless, UBS has failed to present
a "strong prima facie case" evincing its likelihood of
success on the question of whether Defendants qualify as

"customers" of UBS under the FINRA Code.  <u>Gibson</u>, 541 F.

Supp. at 137.

Next, the Court considers whether UBS has raised
sufficiently serious questions going to the merits of the
dispute, and a balance of the equities tipping decidedly in
its favor.

     c.   <u>Sufficiently Serious Questions</u>

UBS maintains that this case raises complex issues of
law and fact, and that the hardships it would face if
compelled to arbitrate far outweigh the possible hardship to
WVUH if a preliminary injunction is granted.  The burden on
UBS here is no lighter than the one it bears under the
"likelihood of success" standard, as it must not only show
that there are "serious questions" going to the merits but
also establish that "the balance of hardships hardships
tip[s] decidedly" in its favor.  <u>Citigroup Global Mkts.</u>, 598
F.3d at 35.

The Court is not persuaded that, even if there were
sufficiently serious questions going to the merits of this
case, the balance of hardships tips decidedly in UBS' favor.
Rather the Court finds that further delay of these
proceedings would frustrate Defendants' right to a speedy
arbitration of their claims.  This hardship is not

outweighed by any potential hardship to UBS.    Therefore,
the Court holds that UBS has not satisfied its burden as to
this prong.  See MyWebGrocer, LLC v. Hometown Info, Inc.,
375 F.3d 190, 194 (2d Cir. 2004) (affirming denial of
injunction where balance of hardships was found to be
"equal").

Consequently, UBS's motion for a preliminary injunction
enjoining the FINRA Arbitration is denied.

2.   Preliminary Injunction Restraining Action Outside
of New York County

The FINRA Code requires that the FINRA Director select
the hearing location in accordance with the FINRA Code and
empowers him to change the hearing location upon motion of a
party.  See FINRA Code, Rule 12213(a)(1)&(3).  When an
arbitration involves a customer, FINRA usually "select[s]
the hearing location closest to the customer's residence at
the time of the events giving rise to the dispute."  See
id., Rule 12213(a)(1).  Instead of moving FINRA to challenge
its decision to conduct the arbitration in Charleston, West
Virgina, UBS argues that the Court should enforce the venue
selection clause in a Broker-Dealer Agreement signed by the
parties, which, according to UBS, requires that Defendants
bring their claims against UBS in New York County.

12

In a conflict between a forum selection clause
contained in the parties' arbitration agreement -- here, the
FINRA Code -- and a clause in the parties' Broker-Dealer
Agreement where any reference to arbitration is
"[c]onspicuously absent," the issue must be resolved in
favor of the arbitration agreement. Patten Securities
Corp., Inc., 819 F.2d at 407 (refusing to enforce a forum
selection clause designating New Jersey as forum for
disputes to enjoin arbitration proceedings under the NASD
Code in Colorado). Cf. Bank Julius Baer & Co., Ltd. v.
Waxfield Ltd., 424 F.3d 278, 284 (2d Cir. 2005) ("[W]e
cannot say that the Forum Selection Clause, which does not
even mention arbitration, either specifically precludes
arbitration or contains a positive assurance that this
dispute is not governed by the Arbitration Agreement.").

In J.P. Morgan Securities Inc., the court noted that
FINRA's forum selection provision would control despite the
existence of a separate provision between the parties and
admitted "there is a strong likelihood that the arbitration
will take place in [FINRA determined location]." 712 F.
Supp. 2d at 74-75. Although UBS certainly has the right to
challenge the venue of the arbitration, "this challenge must
be heard by the arbitrators." Id. at 74. Finally, it is

13

worth noting that both the obligation to arbitrate under
FINRA and the forum selection clause "can be given effect,
for arbitration awards are not self-enforceable .... [E]ven
if arbitration is completed, the forum selection clause
would appear to dictate the location of any action to
enforce the award." Patten Securities Corp., 819 F.2d at
407.

Because the FINRA Code constitutes the arbitration
contract between UBS and Defendants, its provision on the
hearing location is determinative.  Therefore, UBS's motion
for a preliminary injunction restraining any action against
it outside of New York County is denied.

### III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 10) of plaintiffs
UBS Financial Services, Inc. and UBS Securities, LLC
(together, "UBS") for a preliminary injunction restraining
defendants  herein from proceeding before the Financial
Industry Regulatory Authority with its arbitration at issue
in this action is DENIED; and it is further

**ORDERED** that UBS's motion for a preliminary injunction
preventing defendants herein from proceeding with any form
of action against UBS outside of New York County is DENIED;

and it is further

ORDERED that UBS is directed to inform the Court by January 11, 2011 whether, in light of the instant ruling, it contemplates any further proceedings in this Court.

**SO ORDERED.**
Dated: New York, New York
       4 January 2010

                                    VICTOR MARRERO
                                       U.S.D.J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

UBS FINANCIAL SERVICES, INC. and
UBS SECURITIES LLC,

                     Plaintiffs,

            - v. -                      :  10 CV 4298 (VM)

WEST VIRGINIA UNIVERSITY HOSPITALS, INC.,  :  ECF Case
UNITED HOSPITAL CENTER, INC., WEST VIRGINIA  :
UNIVERSITY HOSPITALS-EAST, INC., CITY  :  **CERTIFICATE OF SERVICE**
HOSPITAL FOUNDATION, INC., and WEST VIRGINIA :
UNITED HEALTH SYSTEM, INC.,

                    Defendants.

---------------------------------------------------------------x

     John Nichols certifies: I am over eighteen (18) years of age and on January 14,

2011, I caused copies of the Notice of Appeal and all exhibits thereto to be served by

overnight mail upon the following counsel for Defendants West Virginia University

Hospitals, Inc., United Hospital Center, Inc., West Virginia University Hospitals-East,

Inc., City Hospital Foundation, Inc., and West Virginia United Health System, Inc.:

          BAILEY & GLASSER LLP
          Athanasios Basdekis
          209 Capitol Street
          Charleston, West Virginia 25301
          (304) 340-2282

     I certify under penalty of perjury that the foregoing is true and correct.

                                John Nichols

Dated: New York, New York
       January 14, 2011